UNITED STATES of America, Appellee,

v.

Darion W. CHAMBERS, Appellant.

No. 92–1525.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1992.

Decided March 8, 1993.

F. Lawrence Warren, Kansas City, MO, argued, for appellant.

Peter M. Ossorio, Kansas City, MO, argued, for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Darion W. Chambers entered a conditional plea of guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2) to possession with the intent to distribute 50 grams or more of a mixture containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He specifically reserved

his right to appeal the district court's [1] denial of his motion to suppress the evidence seized at his home by the police pursuant to a search warrant. He contends that the affidavit upon which the search warrant was issued was not sufficient to support a finding of probable cause. He also contends that the reliance on the search warrant by the police was not objectively reasonable and therefore does not fall within the good-faith exception to the exclusionary rule. We affirm.

## I.

In the fall of 1988, uniform patrol officers of the Kansas City, Missouri, Police Department conducted periodic surveillance of a suspected drug house at 1201 East 61st Street. The police received reports of heavy traffic at the house during all times of the night in which people would drive up, go inside the house for only three or four minutes, and then drive away. As part of its "Operation Pounce" program, the police began to follow the vehicles leaving the suspected drug house. If any traffic violations occurred, the police would stop the vehicle and investigate. In late September 1988, two of these police stops yielded crack cocaine, various drug paraphernalia, and a pistol. The person possessing the pistol told the police that 1201 East 61st Street was in fact a drug house and that he had purchased the pistol from the occupants of that house.

On November 17, 1988, the police began to follow a car containing four people who had just left the suspected drug house. After the driver of this car ran a stop sign, the police pulled the car over and investigated. One person fled and could not be apprehended by the police. A second person gave the officers what they believed was a false identity. After conducting a computer identification check, the police discovered that the person had lied about his true identity and that he was wanted for a state probation violation. The police arrested him and took him to the police station. The remaining two people in the car were released at the scene.

At the police station, Sergeant Wellington, a member of the Kansas City, Missouri, Police Department and the supervisor of "Operation Pounce," talked to this person [2] and agreed to release him from custody in return for accurate information concerning the activities conducted at 1201 East 61st Street. Sergeant Wellington then summoned Detective Brad Wessler of the Kansas City, Missouri, Police Department's Drug Enforcement Unit to interview the probationer. After Detective Wessler arrived at the police station at approximately 6:30 p.m., Sergeant Wellington told him about the circumstances surrounding the probationer's arrest. Sergeant Wellington did not, however, tell him about the extent of the police surveillance conducted pursuant to Operation Pounce or about the confiscation of the drugs, the drug paraphernalia, or the pistol from previous stops of other people seen leaving the suspected drug house. The interview between Detective Wessler and the probationer lasted for approximately one hour.

Based on the information attained during this interview, Detective Wessler prepared an affidavit and an application for a search warrant of the house located at 1201 East 61st Street. The affidavit submitted in support of the search warrant set forth the following information. On November 17, 1988, the police followed a car that had just left the house located at 1201 East 61st Street. After observing the car run a stop sign, the police pulled the car over at approximately 5:45 p.m. One of the four people fled. During a computer identification check of one of the other people, the police discovered that this person had lied about his true identity and that he was wanted on "numerous warrants." This person was taken to the police station.

---

**1.** The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

**2.** As part of the agreement, the identity of the person arrested in "Operation Pounce" after the traffic stop remains confidential. We will therefore refer to him in the remainder of this opinion as "the probationer."

The other two people in the car were released at the scene.

Detective Wessler then indicated in his affidavit that at this time "a subject" ("the informant") who requested anonymity "contacted" the Support Unit Officers and informed the police that 1201 East 61st Street is a drug house where crack cocaine is sold. The informant indicated that a male named "Herschel" runs the drug operation and is assisted by "Mike" and several other black males. The informant stated that he was in the drug house on November 17, 1988, at approximately 5:30 p.m., and that he had observed two large bags of a white powdery substance and digital scales on the table in the kitchen, a microwave oven, money, either a machine gun or an automatic rifle in the living room, and an automatic weapon near the front door. He also stated that Herschel was "rocking up" the powder cocaine into "crack" cocaine. He indicated that he observed Herschel count $400,000 in U.S. currency at the kitchen table and that Herschel intended to install a safe in the basement. According to the informant, Herschel owned an extensive collection of guns that he kept in the house and that normally everyone in the house was armed with a firearm. Additionally, the informant told Detective Wessler that Friday and Saturday nights were the busiest days for selling crack cocaine at the house. Finally, he stated that Herschel does not allow anyone to use drugs at the house and that he sells the drugs only from this location.

After preparing the affidavit, Detective Wessler went to the home of Associate Circuit Court Judge Baker at approximately midnight. Judge Baker read the application and the affidavit and then questioned Detective Wessler in more detail about the circumstances in the case. At 12:25 a.m., Judge Baker signed the search warrant.

At 1:30 a.m. that same evening, the police executed the search warrant on the house at 1201 East 61st Street. At the time of the search, Chambers, six other adults, and several juveniles were in the house. Chambers attempted to escape out the back door but was caught. When confronted by the police, Chambers tried to throw away a large quantity of crack cocaine. The police also discovered eight firearms in the house as well as equipment for making and packaging crack cocaine including plastic bags and scales.

Chambers was subsequently indicted and charged with (1) possession with intent to distribute 50 grams or more of a cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and (2) use of firearms during and in relation to the substantive drug charge in violation of 18 U.S.C. § 924(c). Chambers moved to suppress all of the evidence seized from the drug house on November 17, 1988. The district court denied the suppression motion. Chambers then entered a conditional plea of guilty to the substantive drug charge and specifically reserved his right to appeal the district court's denial of his suppression motion. Chambers went to trial on the firearms charge. After receiving evidence, the district court found Chambers guilty of violating § 924(c). The district court denied his post-trial motions and Chambers appealed the denial of his suppression motion.

Chambers contends that the district court erred in denying his motion to suppress the evidence discovered during the search of the drug house. He argues that there was not sufficient probable cause to issue the search warrant and that the police officer's reliance on the search warrant was not objectively reasonable and therefore does not fall within the good-faith exception to the exclusionary rule.[3] "We

---

**3.** Chambers also argues that stopping the car with the four people on November 17, 1988, for a traffic violation was merely a pretext for investigating the suspected drug activity at 1201 East 61st Street. Because the police allegedly acted in bad faith, Chambers argues that the *Leon* good-faith exception to the exclusionary rule does not apply. *See State v. Blair*, 691 S.W.2d 259, 264 (Mo.1985) (en banc). Cham-

bers did not make this argument in the district court but instead raises this issue for the first time on appeal. "This court will not consider an issue raised for the first time on appeal absent a showing of plain error resulting in a miscarriage of justice." *United States v. Merritt*, 982 F.2d 305, 306 (8th Cir.1992). We conclude that a miscarriage of justice does not result from our refusal to consider this issue.

review a district court's ruling on a motion to suppress evidence under the clearly erroneous standard." *United States v. Williams,* 981 F.2d 1003, 1005 (8th Cir. Dec. 28, 1992) (citing *United States v. Johnson,* 925 F.2d 1115, 1117 (8th Cir. 1991)).

## II.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court held that the Fourth Amendment's exclusionary rule generally should not bar the use of evidence in the government's case in chief when police officers acting in good faith rely on a search warrant issued by a detached and neutral magistrate that is ultimately found to be invalid. The police officers' reliance must be objectively reasonable. *Id.* at 919, 104 S.Ct. at 3418. The Supreme Court, however, also articulated four exceptions to the good-faith exception to the exclusionary rule. Police officers may not rely on the search warrant if: (1) the judge issuing the search warrant was misled by information in the affidavit that the affiant either knew was false or should have known was false but for the affiant's reckless disregard of the truth; (2) the issuing judge abandoned his or her neutral and detached role and instead acted merely as a "rubber stamp" for the police officers; (3) the police officers' good-faith reliance was objectively unreasonable because the affidavit lacked sufficient indicia of probable cause; and (4) the police officers' presumption of the search warrant's validity was objectively unreasonable because the search warrant was facially deficient. *Id.* at 923, 104 S.Ct. at 3420. In each of these four instances, suppression of the evidence is the appropriate remedy. *Id.*

Appellate courts can properly analyze the issue of the *Leon* good-faith exception to the exclusionary rule before reviewing the issue of probable cause. *Id.* at 925, 104 S.Ct. at 3421. Like the experienced district judge below, we elect to do so in this case. Therefore, we first must determine whether Detective Wessler's reliance on the search warrant was objectively reasonable.

■ Regarding the exceptions to the *Leon* good-faith exception, Chambers first argues that Detective Wessler deliberately and/or recklessly misled Judge Baker into issuing the search warrant. Specifically, Chambers contends that Detective Wessler deliberately attempted to conceal the fact that the probationer (the person in the car who was stopped by the police on November 17, 1988, and who had lied to the police about his true identity) was the same person as the informant (the person who talked to Detective Wessler on November 17, 1988, at the police station and provided the basis for the search warrant application). Furthermore, Chambers states that Detective Wessler omitted from the search warrant application the facts that he had no knowledge of the informant's character for truthfulness, that he made no attempt to verify the truth of the informant's statements, and that the police did not find any drugs or firearms on the informant when they stopped the car on November 17, 1988.

The district court found that although the affidavit failed to state a clear connection between the probationer and the informant this inference could be reasonably drawn. Our review of the affidavit convinces us that this finding is not clearly erroneous. Additionally, the affidavit provides adequate information regarding the questionable background of the informant. For example, Detective Wessler specifically stated that the probationer had lied about his true identity and that he was wanted on numerous warrants. Chambers also admits that Judge Baker questioned Detective Wessler about the informant and that Detective Wessler told Judge Baker that he had no prior dealings with the informant. Based on our reading of the affidavit, we hold that the district court's finding that Detective Wessler did not deliberately and/or recklessly mislead the issuing judge is not clearly erroneous.

■ Chambers next argues that the issuing judge was no more than a "rubber stamp" for the police in concluding that probable cause existed and in signing the search warrant application. We disagree. In this case, the issuing judge studied the

affidavit and the application for approximately 25 minutes. The judge also questioned Detective Wessler about the confidential informant. On one previous occasion, the judge had initially declined to issue a warrant to Detective Wessler because he found the application wanting, and he required additional support to be furnished. The district court found that "there is nothing in the record which indicates that the issuing judge abandoned his constitutional duty to review the application and affidavit objectively and in accordance with his understanding of the law." District Court Memorandum at 11. We agree and hold that this finding is not clearly erroneous.

Chambers also argues that Detective Wessler could not have reasonably, objectively, and in good faith believed that probable cause existed to support the issuance of the search warrant. We disagree. When assessing the good faith of Detective Wessler, we must look at the totality of the circumstances including what Detective Wessler knew but did not include in his affidavit. *See United States v. Martin*, 833 F.2d 752, 756 (8th Cir.1987) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). In this case, Detective Wessler knew that the informant had been seen leaving the drug house on November 17, 1988. Detective Wessler also knew that the informant had provided a detailed description of the activities taking place in the drug house. Based on the totality of the circumstances, the district court concluded that it was objectively reasonable for Detective Wessler to have believed that probable cause existed in this case. Once again, we hold that the district court did not clearly err in its finding.

Chambers does not challenge the fourth exception to the good-faith exception in *Leon.* Therefore, we do not address the issue.

Because we find that Detective Wessler objectively and reasonably relied in good faith on the issuance of the search warrant, we hold that the district court properly denied Chambers' suppression motion. Therefore, we do not address the issue of whether there was sufficient evidence to support a finding of probable cause. Regardless of whether probable cause was lacking in this case, Detective Wessler's conduct falls within the *Leon* good-faith exception to the exclusionary rule, and therefore, the evidence would be admissible.

### III.

Accordingly, we affirm the district court's decision to deny Chambers' motion to suppress.