Anthony Easton MOYA *v.* STATE of Arkansas

CR 98-529                                    981 S.W.2d 521

Supreme Court of Arkansas
Opinion delivered November 19, 1998

*John Wesley Hall, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. This case involves the validity of a search warrant. Appellant Anthony Easton Moya appeals the judgment of the Miller County Circuit Court denying his motion to suppress evidence obtained with the search warrant. Appellant argues on appeal that the trial court erred in denying his motion to suppress, because the affidavit and warrant did not describe with particularity the place to be searched. He also argues that the State is barred from raising a good-faith defense to the search warrant on appeal, because it failed to give notice of such defense to Appellant during the proceedings below. This appeal was certified to us from the Arkansas Court of Appeals, as it presents issues requiring further development of the law and this court's rules of criminal procedure. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(d). We affirm.

The record reveals that on September 26, 1995, a United Parcel Service (UPS) package was shipped from Bakersfield, California, to Apartment 50 at the Smith-Keys Apartments in Texarkana. Prior to that date, UPS personnel in California noticed that the package was leaking, and they opened it. Inside the package was cocaine and a gun. This information was reported to the Bakersfield Police Department, who, in turn, reported to the Bi-State Narcotics Task Force in Texarkana. The task force then decided to make a controlled delivery of the package to the

Smith-Keys Apartments, Apartment 50, with an undercover officer posing as the UPS deliveryman. The delivery occurred at approximately 11:30 a.m. The task force also decided to prepare a search warrant and supporting affidavit for Apartment 50 ahead of time so that it could be served simultaneously with the delivery of the package. Officers were positioned around the apartment complex to observe the delivery. Investigator Rick Hawkins of the Texarkana Police Department was the officer responsible for obtaining the search warrant.

Investigator Hawkins presented Circuit Judge Jim Hudson with the affidavit for the search warrant. Hawkins swore to the truth of the facts in the affidavit before Judge Hudson. The delivery of the package to Apartment 50 occurred at the same time that Hawkins was obtaining the search warrant for Apartment 50. After Judge Hudson signed the warrant, as Hawkins was leaving the judge's office, a surveillance officer informed Hawkins via radio that the package had been moved to Apartment 51. According to Hawkins, he returned to Judge Hudson's office and explained to him that the package had been moved to Apartment 51. After hearing Hawkins's explanation, either Judge Hudson or Hawkins changed all but one of the references to Apartment "50" in the search warrant and affidavit to Apartment "51."[1] Both Hawkins and Judge Hudson initialed the changes. No recorded testimony was taken from Hawkins, nor was any additional information written on the affidavit noting the change in circumstances. Hawkins then radioed to the officers on the scene that the warrant had been signed, thus authorizing a search of Apartment 51. The officers then searched Apartment 51, seizing the narcotics and the gun and arresting Appellant and another person.

■ Appellant filed a motion to suppress the evidence seized during the search of Apartment 51, and a hearing was held on February 2, 1998. The trial court denied the motion. Appellant then entered a conditional plea of guilty, pursuant to A.R.Cr.P. Rule 24.3, to the charge of possession of cocaine with intent to

---

[1] The testimony of Investigator Hawkins and Judge Hudson reflects some confusion as to which one actually marked through the references to Apartment 50 and changed them to Apartment 51; however, it is clear that both initialed the changes.

deliver and was sentenced to ten years in the Arkansas Department of Correction. He appeals the trial court's ruling on the suppression motion. When we review a trial court's denial of a motion to suppress evidence, we make an independent determination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State, and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998).

### I.  *Validity of the Affidavit and Search Warrant*

Appellant first argues that by changing the apartment numbers in the affidavit and warrant, the State thereby made the affidavit untrue and nullified the probable cause shown therein, in violation of the Fourth Amendment to the United States Constitution. He submits that the affidavit was originally written to reflect the correct information that the controlled delivery of the package would occur at Apartment 50, and that Ingrid Brown resided at Apartment 50. He contends that when the package was moved from Apartment 50 to 51, and the number "50" in the affidavit and warrant was changed to "51," this created a false statement that the controlled delivery occurred at Apartment 51 and that Ingrid Brown was the resident of Apartment 51. He contends further that the failure to make a written record of the reasons for making the changes in the affidavit and warrant constituted a substantial violation of A.R.Cr.P. Rule 13.1(c), and that, as such, the trial court should not have permitted any testimony during the suppression hearing about the change in circumstances.

The State contends that the search is valid because the executing officers acted with an objective good-faith reliance upon Judge Hudson's having issued the warrant, pursuant to the holding in *United States v. Leon*, 468 U.S. 897 (1984). Appellant argues that the officers' actions cannot be upheld under the *Leon* good-faith standard, and that, in any event, the State is procedurally barred from benefitting from this defense, as the prosecutor failed to give Appellant prior notice that the State would rely on that defense.

■ Appellant is correct in his assertion that Rule 13.1(c) requires the recordation of oral, sworn testimony given in support of an affidavit for search warrant. In *Jackson v. State*, 291 Ark. 98, 722 S.W.2d 831 (1987), this court was faced with a situation wherein a confidential informant gave sworn, recorded testimony to the magistrate in support of a search warrant, but the State refused to disclose the testimony because the prosecutor did not want to reveal the informant's identity. Holding that the sufficiency of the application for search warrant must be decided solely on the information contained in the written affidavit, this court explained:

> A.R.Cr.P. Rule 13.1(c) requires recordation of such oral testimony. The purposes of such a rule are to facilitate subsequent review for the existence of probable cause and to avoid the possibility of justification for a search becoming based upon facts or evidence discovered in the course of execution of the warrant, and, in the event the probable cause is based upon hearsay, explaining the reliability of the informant. These considerations are particularly appropriate for the review of ex parte proceedings involving the valued right of privacy. They also serve to minimize the necessity of calling issuing magistrates to prove what can easily be documented. *State v. Russell*, 293 Or. 469, 650 P.2d 79 (1982); 2 W. LaFave, *Search and Seizure* 4.3(b) (1978). Because the state refused to disclose the recorded oral testimony, the very purposes of the rule were defeated, and we will not consider that testimony in deciding this case.

*Id.* at 99–100, 722 S.W.2d at 832. Similarly, in *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990), this court held that because Rule 13.1(c) requires the recordation of oral testimony, this court does not consider unrecorded testimony.

In *Lunsford v. State*, 262 Ark. 1, 552 S.W.2d 646 (1977), this court held that it was the State's burden to establish that a search warrant relied upon by its officers was issued in compliance with the law by producing the required written evidence relied upon by the issuing magistrate as establishing probable cause. *See also Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987). This court went on to state:

> Since the state did not produce sufficient evidence to show that there was probable cause for the issuance of the warrant, the motion to suppress should have been granted. *We consider the failure to record the testimony on which a search warrant is issued to be a substantial violation of proper safeguards in procedures for obtaining a search warrant.*

*Lunsford*, 262 Ark. at 3, 552 S.W.2d at 647 (emphasis added). *See also State v. Anderson*, 286 Ark. 58, 688 S.W.2d 947 (1985), *overruled on other grounds, Jackson*, 291 Ark. 98, 722 S.W.2d 831. Appellant relies on this language from *Lunsford* in support of his argument that the failure to record Hawkins's oral testimony, given after the warrant had been signed by Judge Hudson, is a substantial violation of our rules of criminal procedure as provided in A.R.Cr.P. Rule 16.2(e), and requires suppression of the evidence obtained in the search. Appellant's assertion does not, however, resolve the issue on appeal regarding the officers' good-faith reliance on the search warrant.

In *Jackson*, 291 Ark. 98, 722 S.W.2d 831, this court concluded that the written affidavit was deficient in that it did not provide the issuing magistrate any particular facts bearing on the informant's reliability pursuant to Rule 13.1(b). Having already concluded that the sworn, oral testimony given by the informant to the magistrate was not to be considered, this court nonetheless upheld the search on the basis that the officers had acted with an objective good-faith reliance on the validity of the search warrant. This court held that because there was a written affidavit in support of the search warrant, the good-faith exception to the exclusionary rule established in *Leon*, 468 U.S. 897, was applicable, as the officer who executed the warrant had acted in good faith. The *Jackson* court distinguished the situation there from that presented in *Anderson*, 286 Ark. 58, 688 S.W.2d 947, where this court refused to apply the *Leon* good-faith exception because there was no written affidavit in support of the search warrant — only *un*recorded oral testimony.

Recently, in *Sims v. State*, 333 Ark. 405, 969 S.W.2d 657 (1998), we expanded upon the reasoning employed in *Jackson*, 291 Ark. 98, 722 S.W.2d 831. In *Sims*, we were presented with a similar factual situation. There, California authorities intercepted

a Federal Express package addressed to the residence of the appellant Sims. The Arkansas officers then planned to do a controlled delivery of the package to Sims's residence. As part of the planned controlled delivery, Officer Clemmons prepared an affidavit for a search warrant and presented it to the municipal judge. In the affidavit, Clemmons inaccurately stated that the package *was* delivered to Sims, when in reality the package had not yet been delivered. In affirming the trial court's denial of Sims's motion to suppress the evidence, we pointed out that the municipal judge was aware that the package had not been delivered at the time he signed the warrant, as the Federal Express package was sitting on the judge's desk when he reviewed the paperwork. Sims argued that because Clemmons's statements regarding the delivery of the package were untrue, no accurate showing of probable cause was shown to exist upon which the judge could issue a warrant. We held:

> Unquestionably, the affidavit and search warrant presented to Judge O'Bryan contained untrue statements since no delivery had been made at the time Officer Clemmons requested a warrant from the judge. Obviously, if probable cause and the issuance of a warrant were dependent on information showing that contraband had previously been delivered to Sims's residence, the judge's issuance of the warrant and the execution of the warrant were invalid. *However, even if the warrant is defective,* as argued by Sims, *we conclude the contraband evidence was still admissible because the officers executing the warrant did so in good faith.*

*Id.* at 409, 969 S.W.2d at 659 (emphasis added) (citing *Leon,* 468 U.S. 897, and *United States v. Livesay,* 983 F.2d 135 (8th Cir. 1993)).

In *Sims,* we applied the Supreme Court's holding in *Leon* that the Fourth Amendment exclusionary rule should not be applied to bar the use of the prosecution's evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be invalid. We acknowledged, however, that suppression remains an appropriate remedy if the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless

disregard of the truth. *Id.* (citing *Leon*, 468 U.S. 897; *Franks v. Delaware*, 438 U.S. 154 (1978)). We then concluded:

> Although we may not look to facts outside of an affidavit to determine probable cause, *when assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit.*

*Id.* at 410, 969 S.W.2d at 660 (emphasis added) (citing *United States v. Martin*, 833 F.2d 752 (8th Cir. 1987), *cert. denied*, 494 U.S. 1070 (1990)). *See also United States v. Chambers*, 987 F.2d 1331 (8th Cir. 1993) (holding that when viewing the totality of the circumstances to assess an officer's good faith, it is appropriate to consider information that the officer knew, but did not include in his or her affidavit).

In *Martin*, 833 F.2d 752, the Eighth Circuit relied in part on the Supreme Court's holding in *Anderson v. Creighton*, 483 U.S. 635 (1987), wherein the Court observed that "the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials." 833 F.2d at 756 (quoting *Anderson*, 483 U.S. at 641). This holding is consistent with the Court's holding in *Leon*, 468 U.S. 897, that "all the circumstances" may be considered in determining "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922-23, n. 23. *See also United States v. Bowling*, 900 F.2d 926 (6th Cir.), *cert. denied*, 498 U.S. 837 (1990).

Similarly, in *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990), *cert. denied*, 498 U.S. 1094 (1991), the court held that "in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." Moreover, in *United States v. Simpkins*, 914 F.2d 1054 (8th Cir. 1990), *cert. denied*, 498 U.S. 1101 (1991), the court indicated that in assessing the officers' good faith, it was appropriate to consider information known to

the officers, even if that information was *not* presented to the issuing judge. *See also United States v. Johnson*, 78 F.3d 1258 (8th Cir. 1996).

The foregoing cases demonstrate that unrecorded oral testimony may not be considered, by the trial court or appellate courts, when determining whether there was sufficient probable cause to issue a search warrant. Where there is neither a written affidavit nor sworn, recorded testimony in support of a search warrant, this court will not apply the good-faith exception to uphold the search warrant. Where, however, there is a written affidavit in support of the search warrant that later is ruled deficient, this court will go beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officers executing the search warrant did so in objective good-faith reliance on the judge's having found probable cause to issue the search warrant. Moreover, this court may also consider information known to the executing officers that may or may not have been communicated to the issuing judge.

Here, several witnesses testified to the antecedent circumstances involving the removal of the package from Apartment 50, where it had been delivered, to Apartment 51. Investigator Hawkins testified that after Judge Hudson signed the warrant, just as he was leaving the judge's office, he received a radio communication from Captain Sharp informing him that there had been a change in circumstances. He stated that the lookout officer had advised that just as the UPS driver was leaving, Appellant and another person had picked up the package from Apartment 50 and immediately took it upstairs to Apartment 51. He stated that he again approached Judge Hudson and explained the situation to him, and that the two of them amended the search warrant, marking through the references to Apartment 50 and inserting the number 51 in their places. Hawkins's testimony was supported by Officer Coy Murray of the Texarkana Police Department.

Officer Murray testified that he was present at the Smith-Keys Apartments on September 26, 1995, and that it was his job to watch the building where Apartment 50 was located. He stated that he observed the delivery of the package to Apartment 50, and

that he saw a female go to the door of Apartment 50, and that Appellant was standing on the steps leading to the apartments on the upper level of the building. The female brought the package out of Apartment 50 and set it at Appellant's feet. Appellant looked at the package and picked it up while he and the female looked at it, sort of investigating the package. Appellant and the female then went upstairs to Apartment 51. Murray stated that when he saw them take the package to Apartment 51, he notified the other officers that the package had moved from Apartment 50 to Apartment 51. Murray stated that he notified Captain Sharp of this development.

Judge Hudson testified that Investigator Hawkins indicated to him that he had word from the police officers at the scene that the number of the apartment in the proposed affidavit was incorrect, and that it should have been Apartment 51. He stated that he was unsure whether Hawkins had actually told him that the package had moved, but that it could have happened that way. He stated that Hawkins made the changes to the affidavit and warrant in his presence and that both he and Hawkins initialed the changes. Judge Hudson stated that at the time he signed the affidavit, whether the incidents alleged in the affidavit actually applied to Apartment 50 or Apartment 51, those facts would have led him to believe that there was probable cause to search the residence. He stated that he did not at any time tell Hawkins that he did not believe there was probable cause contained in the search warrant.

The foregoing testimony establishes that the officers had prepared a valid anticipatory search warrant for Apartment 50, but before they could execute the warrant, the circumstances changed when the package containing the contraband was immediately moved to Apartment 51. This change of circumstances was communicated to the officer who had prepared the affidavit and warrant, and he, in turn, informed the issuing judge of the change. This is not a situation where false information was given to the issuing judge. To the contrary, once Investigator Hawkins, the affiant, became aware of the change in circumstances involving the removal of the package, he immediately informed Judge Hudson of this change. They then acted together to make the necessary corrections in the affidavit and warrant to reflect that Apartment

51 had become the apartment to be searched because it contained the contraband. Both Hawkins and Judge Hudson initialed the changes, and Hawkins left the judge's office with what he reasonably perceived to be a valid search warrant.

■ To apply the exclusionary rule in this case would serve no useful purpose, as there is no police misconduct here to deter, nor is there any evidence that the judge was misled by false information. The fact that Hawkins immediately turned around and went back into the judge's office and disclosed the change in circumstances demonstrates that he attempted to fully inform the judge as to the current state of events. We therefore conclude that the trial court's denial of Appellant's suppression motion was appropriate based on the officers' objective good-faith reliance on the issuance of the search warrant by Judge Hudson.

■ We find no merit to Appellant's argument that the State was required to notify the defense prior to the suppression hearing that it would rely on the good-faith exception established in *Leon*, 468 U.S. 897. The record demonstrates that the prosecutor did in fact argue the good-faith exception during the suppression hearing; however, even if that argument had not been raised below, it would not prevent this court from considering it on appeal. This court has repeatedly stated that we will affirm the trial court when it has reached the right decision, even if for the wrong reasons. *See Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Huggins v. State*, 322 Ark. 70, 907 S.W.2d 697 (1995); *Hagen v. State*, 315 Ark. 20, 864 S.W.2d 856 (1993); *Register v. State*, 313 Ark. 426, 855 S.W.2d 320 (1993).

## II.   Rule 13.3(b)

Appellant lastly argues that the evidence should have been suppressed because the warrant was not present at the time of the search and because a copy of the warrant was not provided to the occupant in compliance with Rule 13.3(b). Other than Rule 13.3(b), Appellant cites no authority in support of this argument. The State first contends that because Appellant was not the lessor or even a resident of Apartment 51 (he was merely an overnight guest), he has no standing to make a challenge under Rule

13.3(b). The State also contends that any violation of Rule 13.3(b) was not substantial and did not prejudice Appellant's case in any way. We agree.

■  Rule 13.3(b) provides that the executing officer shall give a copy of the warrant to the person in apparent control of the premises to be searched, before undertaking the search, except in certain circumstances not material in this case. *See Baxter v. State,* 262 Ark. 303, 556 S.W.2d 428 (1977). In *Baxter,* this court concluded that although the executing officer had not fully complied with the rule, it was clear from the record that a copy was furnished to the appellant and her attorney, and that the appellant was present when the warrant was executed and was afforded an opportunity to read the warrant. This court ultimately held that the officer's omission to leave a copy with the appellant was not a substantial violation of the rule and thus did not constitute a ground for suppression under Rule 16.2.

■  Here, Appellant was present when the search was conducted, and both he and his attorney obviously received a copy of the search warrant, which permitted him to file a timely motion to suppress the evidence recovered with the warrant and to challenge the validity of the search in the trial court. As such, we conclude that the trial court's ruling was correct, as any violation of Rule 13.3(b) was not substantial and did not warrant suppression of the evidence under Rule 16.2.

■ ■  Moreover, Rule 13.3(b) provides that a copy of the warrant shall be furnished prior to undertaking the search *unless* the executing officer "has reasonable cause to believe that such action would endanger the successful execution of the warrant with all practicable safety, in which case he shall, *as soon as is practicable,* state his authority and purpose and furnish a copy of the warrant." The testimony of the executing officers in this case demonstrates that there were exigent circumstances surrounding the search of Apartment 51 and the seizure of its occupants. Officer Chuck Wise testified that immediately upon entering the apartment, the first two officers through the door secured the first two suspects inside. Wise continued through the apartment

where, upon hearing the toilet flush, he forced open the bathroom door only to discover Appellant standing or kneeling over the toilet flushing plastic bags containing the controlled substances. Investigator Hawkins testified that he served a copy of the warrant on Ingrid Brown that day, after taking her statement at the police station. Given the circumstances of the search, we conclude that the provisions of Rule 13.3(b) were complied with as soon as practicable.

Affirmed.

NEWBERN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. I cannot subscribe to the majority's application of the good-faith exception announced in *United States v. Leon*, 468 U.S. 897 (1984), to the facts in this case. Therefore, I must respectfully dissent.

This case is strikingly similar to the situation we recently addressed in *Sims v. State*, 333 Ark. 405, 969 S.W.2d 657 (1998). I dissented in *Sims* and I do so now for virtually identical reasons. In *Sims*, California authorities intercepted a Federal Express package addressed to Sims's residence. The officer who prepared the affidavit for the search warrant knowingly averred in his affidavit that the package *had been* delivered and received by Sims, when in fact that package had not been delivered or received. Both the magistrate and the officer *knew* the package had not been delivered or received, yet a warrant was issued in spite of the fact that both the affidavit and warrant were patently false. The majority in *Sims* essentially held that an officer may knowingly present a false affidavit and obtain an invalid warrant so long as he discloses to the magistrate what will actually take place. The majority in *Sims* acknowledged that the officer and the magistrate knew that the affidavit and search warrant contained false statements. Nevertheless, the majority upheld the search under the good-faith exception because the officer and magistrate knew that no search would take place until after delivery. Such an outcome defied logic in *Sims* and it continues to defy logic in this case.

The majority opines that applying the exclusionary rule to this case would serve no useful purpose because no police misconduct occurred, and the judge was not misled by false information. The majority's conclusion effectively ignores the fact that the amended affidavit was false. There is no doubt that the original affidavit would have established probable cause for a warrant to search Apartment 50. However, the affidavit as amended and initialed by Investigator Hawkins and Judge Hudson contained numerous misrepresentations. Specifically, Investigator Hawkins knowingly averred in the amended affidavit: 1) that Ingrid Brown resided at 3302 Washington Street, Apartment 51; 2) that the package containing the crack cocaine and a .380 caliber semi-automatic handgun had been addressed to Terry Jackson at 3302 Washington Street, Apartment 51; 3) that the package was delivered to Officer Todd Harness who kept it in his possession until he delivered it to 3302 Washington Street, Apartment 51; and 4) that the package was hand-delivered by Officer Harness to an occupant of 3302 Washington Street, Apartment 51. In fact, Investigator Hawkins *knew* that these averments were false because he knowingly averred in the original affidavit that Ingrid Brown resided at Apartment 50; that the package containing the crack cocaine and a .380 caliber semi-automatic handgun had been addressed to Terry Jackson at Apartment 50; that the package was delivered to Officer Harness who kept it in his possession until he delivered it to Apartment 50; and that the package was hand-delivered by Officer Harness to Apartment 50. All of Investigator Hawkins's statements in the original affidavit were true, and, in fact, described how the events transpired up until the Appellant and another person picked up the package from Apartment 50 and took it to Apartment 51. Investigator Hawkins testified that he explained this change of circumstances to Judge Hudson. However, no affidavit or recorded testimony was given under oath to that effect, as required by Ark. R. Crim. P. 13.1(b). All we have is Investigator Hawkins's amended affidavit which he knew was false.

Just as I did in *Sims, supra,* I again find the majority's reliance on the good-faith exclusion of *Leon, supra,* to be misplaced. I

believe we properly applied the *Leon* good-faith exclusion in *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993), where we stated that every fact in an affidavit need not necessarily be correct, but *"must be truthful in the sense that the information put forth is believed* or appropriately accepted by the affiant as true." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)) (emphasis added). It simply cannot be maintained that Hawkins's amended affidavit was truthful or that he believed it to be truthful.

Once again, under the majority's approach, "an officer may knowingly present a false affidavit and obtain an invalid warrant, but so long as he tells the magistrate what will actually take place he has acted in good-faith when the warrant is eventually executed." *Sims, supra* (Imber, J., dissenting). Such an outcome in this case is as illogical, unwise, and contrary to the law as it was in *Sims*. In attempting to find good faith, the majority in this case essentially reiterates the essence of the majority's holding in *Sims, supra*, that a court may completely disregard a false affidavit to find a totally independent basis on which to hinge probable cause for a warrant that is wholly invalid.

For the above reasons, I must respectfully dissent.

NEWBERN, J., joins in this dissent.