OPINION
Defendant-appellant, Timothy O'Connor, appeals from his conviction and sentence in the Butler County Common Pleas Court following his no contest plea to six counts of illegal use of a minor in nudity-oriented material or performance, four counts of pandering obscenity involving a minor, four counts of pandering sexually-oriented matter involving a minor, and one count of receiving stolen property. The trial court's judgment is affirmed in part and reversed in part, and the matter is remanded for re-sentencing.
In 1999, Timothy O'Connor, who resided in Middletown, Butler County, Ohio, took his computer to Christopher Bell, a part-time computer repairman, who resides in Warren County. While working on O'Connor's computer, Bell saw that it contained files of pornographic material, which included young children involved in explicit sexual acts with other children, adults, and animals. Bell contacted the Warren County Sheriff's Office, who subsequently obtained and executed a search warrant on O'Connor's computer. The Warren County deputies recovered files from the computer containing extensive material depicting children involved in explicit sexual activity.
The Warren County deputies contacted the City of Middletown police, who obtained a search warrant for O'Connor's residence. When Middletown police executed the search warrant, they discovered compact discs and floppy discs that contained approximately one thousand photographs depicting young children involved in explicit sexual acts with other children, adults, and animals. Approximately 30 of the photographs they recovered depicted the head of the minor daughter of O'Connor's fiancée "morphed" onto the nude bodies of adult females.
O'Connor was subsequently charged in Warren County with seven counts of illegal use of a minor in nudity-oriented material or performance and seven counts of pandering obscenity involving a minor. O'Connor was convicted of those charges and sentenced to a period of community control.
O'Connor was subsequently charged in Butler County with six counts of illegal use of a minor in nudity-oriented material or performance, four counts of pandering obscenity involving a minor, four counts of pandering sexually-oriented matter involving a minor and one count of receiving stolen property.
O'Connor moved to suppress the evidence obtained from his home on the grounds that the search warrant obtained by the Middletown police was invalid. O'Connor also moved to dismiss the charges on double jeopardy grounds in light of his Warren County convictions. The trial court overruled both motions.
O'Connor tendered a no contest plea to all fifteen counts in the indictment. The trial court accepted O'Connor's plea, found him guilty, and sentenced him to serve consecutive two year terms on counts one, three, and five, which charged him with illegal use of a minor in nudity-oriented material or performance. The trial court further ordered O'Connor to serve his sentences on the remaining 12 charges concurrent to his sentence on count one. O'Connor was also fined $10,000, and ordered to pay court costs.
O'Connor appeals from his conviction and sentence in the Butler County Common Pleas Court, assigning the following errors:
Assignment of Error No. 1:
 "THE TRIAL COURT ERRED IN OVERRULING MR. O'CONNOR'S MOTION TO SUPPRESS."
O'Connor argues the trial court erred by overruling his motion to suppress the child pornography seized from his residence pursuant to a search warrant because the affidavit submitted by police in support of the search warrant failed to establish a "nexus" between the place to be searched and the items to be seized and, therefore, failed to establish probable cause. O'Connor also contends that the trial court erred in considering evidence outside the "four corners of the affidavit" in determining whether the "good faith exception" to the exclusionary rule applies in this case. O'Connor contends that the good faith exception does not apply. We find O'Connor's arguments unpersuasive.
The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the exclusionary rule, "* * * all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."Mapp v. Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691. Pursuant to the "good faith exception" to the exclusionary rule, however, evidence should not be suppressed when it is obtained by a reasonably well-trained police officer acting in objectively reasonable good faith reliance on a search warrant subsequently found deficient. United States v. Leon
(1984), 468 U.S. 897, 104 S.Ct. 3405.
Crim.R. 41(C) provides that an affidavit submitted by police to obtain a search warrant must state, among other things, "the factual basis for the affiant's belief" that "the property to be searched for and seized" is at "the place to be searched."
The affidavit prepared and submitted by Middletown police officers Larry Fultz and Fred Shumake stated as follows:
 "Affiant (Shumake) was contacted by Det. Rick Logan of the Warren County Sheriffs [sic] Office that he had been contacted by Crisotpher [sic] Bell on June 2, 1999. Bell runs a computer repair business out of his residence. Bell had begun repair work on a computer belonging to Tim O'Connor who resides at 506 Eastline Drive, Middletown, Ohio. Bell advised Det. Logan that while performing repair work he had observed files containing child pornography. At this time, Det. Logan secured a search warrant for the computer.
 "As Det. Logan explored the computer pursuant to the search warrant he observed files in the computer depicting child pornography, specifically, children ranging in age from one year to adult engaged in sexual acts including but not limited to, oral sex, intercourse, and masturbation. Also, some of these photos involved acts of bestiality.
 "Based on this information affiant wishes to search the residence of Tim O'Connor at 506 Eastline Dr. to recover any additional evidence of child pornography and to determine the identity of any victims involved."
The affidavit submitted by Detective Shumake failed to expressly state the "nexus" or connection between O'Connor's residence and the child pornography, as required by Crim.R. 41(C). However, we conclude that the good faith exception to the exclusionary rule applies here, and, therefore, the defect in the affidavit did not invalidate the search warrant.
At the suppression hearing, the state presented the testimony of Christopher Bell, Detectives Shumake and Logan, and the municipal court judge who issued the warrant. This evidence showed that Bell told Logan that the computer came from O'Connor's residence. At one point, according to Bell, O'Connor retrieved his hard drive from Bell's residence to copy files from it so that he would not lose them during Bell's reformatting of the computer. Logan related this information to Shumake, and the two of them related this information to the municipal court judge who issued the warrant.
The police had a good faith basis for believing that the search warrant was valid because of the above information which they imparted to the issuing magistrate, and because of the obvious connection between the place to be searched, i.e., O'Connor's residence, and the items to be seized, i.e., evidence of child pornography. The nature of the evidence for which the police were searching allowed the magistrate to draw a reasonable inference that child pornography would likely be found in O'Connor's residence, because O'Connor needed a secure place where he could keep such material and have access to it during his leisure time. See, generally United States v. Singleton (C.A.7, 1997), 125 F.3d 1097,1102 ("In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account, the nature of the evidence and the offense."). While it is possible that O'Connor might have kept the material elsewhere, such as at his place of business, it was only necessary that there be a "fair probability," rather than an absolute certainty, that the material would be at O'Connor's residence.State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.
O'Connor argues that the testimony of the officers who sought the search warrant and the magistrate who issued it should not have been admitted because evidence outside the four corners of the affidavit cannot be used to establish the good faith exception to the exclusionary rule. In support of his argument, O'Connor cites, among other cases,State v. Klosterman (1996), 114 Ohio App.3d 327, and State v. Gales
(2001), 143 Ohio App.3d 55. These courts held that the determination of whether an officer's reliance on a search warrant ultimately determined to be invalid was objectively reasonable should be confined to the four corners of the affidavit. Klosterman at 332-333; Gales at 62.
In determining whether probable cause exists to support the issuance of a search warrant, a trial court is confined to the four corners of the affidavit and any recorded testimony made part of the affidavit pursuant to Crim.R. 41(C). See State v. Wesseler (Feb. 17, 1998), Butler App. No. CA96-07-131, and Crim.R. 41(C). However, in determining whether the good faith exception to the exclusionary rule applies, this court and others have held that a court may look beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officer executing the search warrant did so in good faith reliance on the magistrate's issuance of the search warrant. See Wesseler, Moya v.State (1998), 335 Ark. 193, 202, 981 S.W.2d 521, 525-526, cited in Katz, Ohio Arrest, Search and Seizure, (2002 Ed.) 151, Section 8.2, fn. 2, andUnited States v. Curry (C.A.8, 1990), 911 F.2d 72, 78 (cited in Moya). The principle in cases like Wesseler, Moya, and Curry is consistent with the statement in Leon that "all of the circumstances" may be considered in determining whether a reasonably well-trained police officer would have known that the search was illegal despite the magistrate's authorization. Leon, 468 U.S. at 922-923, fn. 23. See Moya,335 Ark. at 201, 981 S.W.2d 521, 525.
Accordingly, we hold that a court may go beyond the four corners of an affidavit submitted in support of a search warrant subsequently found to be invalid and consider unrecorded oral testimony to determine whether the police officer executing the search warrant did so in good faith reliance upon the magistrate having found probable cause to issue it. O'Connor's first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED IN IMPOSING A FINDING OF GUILT FOLLOWING MR. O'CONNOR'S NO CONTEST PLEA BECAUSE THE FACTS ALLEGED IN THE INDICTMENT WERE INSUFFICIENT TO SUPPORT A CONVICTION AS A MATTER OF LAW."
O'Connor argues that the trial court erred in finding him guilty on six counts of illegal use of a minor in nudity-oriented material or performance, a violation of R.C. 2907.323(A)(1),[1] following his no contest plea because the counts of the indictment charging him with that offense failed to allege an essential element of that offense, to wit, that the nudity involved lewdness or a graphic focus on the genitals. We disagree with this argument.
"The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment[.]" Crim.R. 11(B)(2). "Where the indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." State v. Bird, 81 Ohio St.3d 582, syllabus, 1998-Ohio-606, following State ex rel. Stern v. Mascio, 75 Ohio St.3d 422, 425,1996-Ohio-93.
Crim.R. 7(B) requires that an indictment "contain a statement that the defendant has committed a public offense specified in the indictment." The required statement may be made "in ordinary and concise language without technical averments or allegations not essential to be proved." Id. The statement may be (1) in the words of the applicable section of the statute under which defendant is charged, provided the words of that statute charge an offense, or (2) in words sufficient to give the defendant notice of all the elements of the offense with which he is charged. Crim.R. 7(B).
The six counts of the indictment charging O'Connor with illegal use of a minor in nudity-oriented material or performance followed the words of R.C. 2907.323(A)(1). Nevertheless, O'Connor argues that this was insufficient to state an offense. In support of this assertion, O'Connor cites State v. Moss (Apr. 14, 2000), Hamilton App. No. C-990631. In that case, the defendant entered a no contest plea to one count of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3). He was found guilty and sentenced to three years of community control. The court of appeals reversed Moss' conviction and discharged him, finding that while the indictment mirrored the language of R.C. 2907.323(A)(3), the indictment failed to allege that the material forming the basis of the charge was lewd or graphically focused on the genitals. The court found such an allegation to be a "judicially engrafted" element of the crime in light of State v. Young (1988),37 Ohio St.3d 249, reversed on other grounds in Osborne v. Ohio (1990),495 U.S. 103, 110 S.Ct. 1691. Therefore, the court concluded that the facts alleged in the indictment were insufficient to state a punishable offense." The court reversed the defendant's conviction and discharged him from further prosecution.
O'Connor requests that we follow Moss and reverse his conviction on the six counts of illegal use of a minor in nudity-oriented material or performance. We decline to do so.
Young held that "R.C. 2907.323(A) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor ward of the person charged." Young, paragraph one of the syllabus. By limiting the statute's operation to nudity that involves lewdness or graphic focus on the genitals, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children, causing the statute to "plainly survive overbreadth scrutiny." Osborne, 495 U.S. at 113-114.
Young narrowly construed the definition of "nudity" to require that it involve a lewd exhibition or graphic display of the genitals to prevent the statute from being held invalid on overbreadth grounds. However, it did not, as the majority in Moss found, "judicially engraft" an element onto R.C. 2907.323. As the dissent in Moss indicated, only the legislature, not the judiciary, has the power to engraft or enact additional elements to the offense. See R.C. 2901.03(A), which provides that "[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code."
The plain words of Crim.R. 7(B) require that the statement in the indictment be "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." (Emphasis added.) WhileOsborne may limit the proof of "a state of nudity" to lewdness or graphic focus on the genitals, in order to meet a constitutional objective, it does not alter the elements of R.C. 2907.323(A)(1).
Here, the indictment gave O'Connor notice of all the elements of the offense with which he was charged; therefore, it complied with Crim.R. 7. Furthermore, at the plea acceptance hearing, the state introduced into evidence, as part of its statement of facts, the photographs that formed the basis for the six counts of illegal use of a minor in nudity-oriented material or performance. The photographs depicted lewdness[2] and had a graphic focus on the genitals.
Together, the indictment and the additional photographic evidence were sufficient to support the trial court's finding that appellant was guilty of violating R.C. 2907.323(A)(1). The trial court therefore did not err in finding O'Connor guilty of those charges following his no contest plea. O'Connor's second assignment of error is overruled.
Assignment of Error No. 3:
 "THE TRIAL COURT ERRED IN ACCEPTING MR. O'CONNOR'S NO CONTEST PLEA WITHOUT INFORMING HIM OF THE POSSIBILITY OF POST-RELEASE CONTROL SUPERVISION."
O'Connor argues his plea was not made knowingly, intelligently, and voluntarily because the trial court failed to inform him that he was subject to a five year period of post-release control supervision, with the possibility of an additional nine months of imprisonment if he violated the conditions of post-release control supervision. Therefore, O'Connor contends, the trial court erred in accepting his plea. We disagree with this argument.
Crim.R. 11(C)(2)(b) requires the trial court to inform a defendant of and determine that he understands the consequences of his guilty or no contest plea. One of the consequences about which a trial court must inform the defendant at sentencing or at the time of a plea hearing is that post-release control is part of his sentence. See Woods v. Telb,89 Ohio St.3d 504, paragraph two of the syllabus, 2000-Ohio-171.
However, the trial court need only substantially comply with those requirements of Crim.R. 11 that do not involve the waiver of a constitutional right. State v. Ballard (1981), 66 Ohio St.2d 473, 475. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990),56 Ohio St.3d 106, 108. Furthermore, a defendant who challenges his guilty or no contest plea on the grounds that it was not made knowingly, intelligently, and voluntarily must demonstrate prejudice. Id. The test is whether the guilty or no contest plea would have been made otherwise. Id.
Here, we are confident that O'Connor would have tendered his no contest plea irrespective of the trial court's failure to expressly inform him that he would be subject to post-release control supervision. First, in exchange for his no contest plea, the state agreed not to indict O'Connor on six additional second-degree felony charges that were before the grand jury at the time he entered his plea. Second, O'Connor signed a written plea agreement that made it clear he would be subject to five years of post-release control. Finally, when O'Connor tendered his plea, the trial court asked him if he had any questions, and O'Connor answered that he had none. In light of these circumstances, we reject O'Connor's assertion that his no contest plea was not made knowingly, voluntarily, or intelligently.
O'Connor's third assignment of error is overruled.
Assignment of Error No. 4:
 "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE FINDINGS CONTAINED IN R.C. 2919.(B)(2)(c) [sic, R.C. 2929.19(B)(2)(c)] AND R.C. 2929.14(E)(4)."
R.C. 2929.14(E)(4) allows a trial court to require a defendant to serve consecutive sentences if it determines that the consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The trial court must also find that one of the circumstances listed in R.C. 2929.14(E)(4)(a) through (c) exists.
In its sentencing entry, the trial court found that the consecutive sentences it imposed "are necessary to protect the public from future crime or to punish the defendant" and are "not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public." The trial court also found, pursuant to R.C. 2929.14
(E)(4)(b), that the harm caused by O'Connor was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of his conduct. These findings were sufficient to comply with the requirements of R.C. 2929.14(E)(4).
O'Connor contends that the trial court made no "verbal attempt" to comply with R.C. 2929.14(E)(4). However, there is nothing in that section that requires the trial court to state the findings in open court at the sentencing hearing.
R.C. 2929.19(B)(2)(c) requires the trial court to explain its reasons for imposing consecutive sentences under R.C. 2929.14. The state acknowledges that the trial court failed to articulate its reasons for imposing consecutive sentences either at the sentencing hearing or in its sentencing entry. Accordingly, O'Connor's fourth assignment of error is sustained to the extent that the trial court failed to articulate its reasons for imposing consecutive sentences. On remand, the trial court is instructed to state its reasons for imposing consecutive sentences.
Assignment of Error No. 5:
 "THE TRIAL COURT ERRED IN TWICE SUBJECTING MR. O'CONNOR TO THE SAME CHARGES IN VIOLATION OF THE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY."
O'Connor argues the trial court erred by not dismissing the charges against him on double jeopardy grounds. We disagree with this argument.
To dismiss a case on double jeopardy grounds, the trial court must find that (1) there was a former prosecution in the same state for the same offense, (2) the same person was in jeopardy in the first prosecution, (3) the parties are identical in the two prosecutions, and (4) "the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar." State v. Best (1975),42 Ohio St.2d 530, 533.
Here, O'Connor has failed to show there was a former prosecution in the same state for the same offense. O'Connor's possession of the child pornography on his computer's hard drive in Warren County constituted one offense, while his possession of the child pornography on compact discs and floppy discs in Butler County constituted a separate and distinct offense. O'Connor could be prosecuted for both offenses.
Accordingly, O'Connor's fifth assignment of error is overruled.
Assignment of Error No. 6:
 "MR. O'CONNOR WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND RELATED OHIO GUARANTEES."
To prevail on an ineffective assistance of counsel claim, a criminal defendant must first show that his trial counsel's performance was deficient. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. This requires the defendant to show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, the defendant must show that he was prejudiced by his counsel's deficient performance. Id. at 687. This requires the defendant to show there is a reasonable probability that but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A failure to make either showing will doom the defendant's claim. Id. at 687, 697.
O'Connor raises eight claims in support of his ineffective assistance of counsel claim. Not one of them has merit. First, O'Connor argues his trial counsel was ineffective for failing to object to the state's introduction of testimony at the suppression hearing to establish probable cause that had not been transcribed and appended to the affidavit as required by Crim.R. 41(C). However, for the reasons stated in our response to O'Connor's first assignment of error, the trial court did not err by admitting this testimony.
Second, O'Connor asserts his counsel was ineffective for "fail[ing] to present relevant and persuasive legal authority to the court on the issues of suppression, double jeopardy, and obscenity[.]" But O'Connor fails to state the "relevant and persuasive" authority to which he is referring that would have created a reasonable probability of a different outcome to the proceeding, nor have we found any.
Third, O'Connor argues that his trial counsel was ineffective for failing to argue to the trial court that there was insufficient evidence to support a finding of guilt. However, by pleading no contest, O'Connor admitted the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). For the reasons stated in response to O'Connor's second assignment of error, those facts, together with photographic evidence introduced by the state at the plea acceptance hearing, were sufficient to allow the trial court to find O'Connor guilty of the offenses with which he had been charged. Therefore, defense counsel did not err by not presenting this argument.
In his fourth and fifth arguments, O'Connor asserts his trial counsel was ineffective for failing to advise him that he would be subject to post-release control supervision and for failing to file a motion to vacate his plea on those same grounds. However, for the reasons previously stated, we conclude that O'Connor would have pled no contest irrespective of the trial court's failure to expressly inform him of that consequence of his plea. Therefore, O'Connor has failed to demonstrate that the results of the proceeding would have been different absent his counsel's alleged error.
Sixth, O'Connor argues that his trial counsel failed to object to the improper imposition of consecutive sentences. However, O'Connor has raised this issue in his fourth assignment of error, which we have sustained to the extent indicated. Thus, O'Connor will suffer no prejudice as a result of this error.
Seventh, O'Connor argues his counsel improperly advised him to enter no contest pleas to 15 counts of various felony and misdemeanor charges upon what he terms "the uninvestigated and unsubstantiated threat" that the state would indict him on additional charges if he did not enter the no contest plea. However, a trial counsel's strategic decisions are to be given broad deference, Strickland, 466 U.S. at 689, and we see nothing in the record to demonstrate that counsel's decision to advise O'Connor to plead no contest amounted to objectively unreasonable representation.
In his eighth argument, O'Connor asserts that his trial counsel ineffectively represented him at his sexual predator hearing. However, O'Connor fails to state what specific errors his trial counsel committed or what his counsel could have done to change the outcome of the proceeding. In light of the foregoing, O'Connor has failed to establish his ineffective assistance of counsel claim.
For the reasons stated above, O'Connor's sixth assignment of error is overruled.
The trial court's judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
YOUNG and VALEN, JJ., concur.
[1] {¶ a} R.C. 2907.323 provides in relevant part:
{¶ b} "(A) No person shall do any of the following:
 {¶ c} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:
 {¶ d} "(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;
 {¶ e} "(b) "The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used."
[2] Young, 37 Ohio St.3d 249, does not define the term "lewdness," but the Ohio Supreme Court has said elsewhere that "lewdness" is not a legal term of art but rather a word of common usage. State ex rel. Rear DoorBookstore v. Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354,358. The court went on to cite the dictionary definition of "lewd," as, "* * * sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire, or imagination * * *." Id., citing Webster's Third New International Dictionary (1986) 1301.