Anthony Wayne FULTZ *v.* STATE of Arkansas

CR 97-1129                                   966 S.W.2d 892

Supreme Court of Arkansas
Opinion delivered April 22, 1998

*Pearson & Chadwick*, by: *Charles R. Chadwick*, and *Christopher F. Woomer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Anthony Wayne Fultz was charged and convicted of (1) possession of a controlled substance with the intent to deliver methamphetamine; (2) simultaneous possession of controlled substances and firearms; (3) conspiracy to deliver the controlled substance methamphetamine; (4) criminal use of a prohibited weapon; and (5) possession of drug paraphernalia. He was sentenced to a total of seventy years and fined $35,000.00. Fultz appeals only from his convictions of simultaneous possession of controlled substances and firearms and criminal use of a prohibited weapon. He challenges the warrantless search of his car and his home and the seizure of the firearms found as a result of those searches. Fultz does not challenge the seizure of any of the controlled substances found, resulting from the searches.

Police officers conducted the disputed warrantless searches when they arrested Fultz at his residence on September 5, 1996. On September 3, 1996, Fultz had voluntarily met with Federal

Drug Enforcement Officer Sam Martin and Arkansas State Police Sergeant Rodney Combs at the Harrison Police Department. During that meeting, Fultz admitted to having traveled to California to purchase methamphetamine for resale in Arkansas. Fultz agreed to cooperate with the police in investigating individuals involved in selling methamphetamine in the area, and agreed to report to Officer Martin on a daily basis. When Fultz failed to report, Officers Martin, Combs, and others obtained an arrest warrant and went to arrest Fultz at his house. Upon their arrival, Fultz was requested to come outside, which he did. The officers arrested Fultz while they stood in Fultz's carport, where Fultz's car was parked.

In searching Fultz incident to his arrest, officers found a small canister of marijuana in his pocket. Officers then asked if he had any guns or drugs, and Fultz said he had a service revolver and a derringer. Fultz mentioned the derringer might be in the car. The officers searched the car and found a MAK-90 rifle and an illegal sawed-off shotgun in the hatchback portion of Fultz's Pontiac Firebird. When asked if he had other weapons, Fultz said that he did. Fultz was handcuffed and placed in the back seat of a police unit. Mrs. Fultz subsequently consented to the officers' search of the house, and she led them to a bedroom, where the service revolver was seen and seized from underneath a mattress. When officers discovered in Mrs. Fultz's purse some plastic, square, clear boxes which appeared to have a white residue in them, Mrs. Fultz withdrew her consent to any further search. Mrs. Fultz was then arrested and placed in her husband's Pontiac, which had been seized by the officers, and she was taken to the police station. Mr. Fultz was taken to the station in a police car. Two officers stayed at Fultz's house while Officer Martin obtained a search warrant. Upon Martin's return to the house, the officers completed their search of the house, an outbuilding, and a second car. The derringer previously mentioned by Fultz, a .22 caliber semi-automatic rifle, telephone records, and a rolling machine were found in the master bedroom, and the search of the outbuilding produced 46.928 grams of methamphetamine, $1,400.00 in cash, seven glass jars containing chemical and methamphet-

amine residue, coffee filters, acetone, denatured alcohol, and two packages of latex gloves.

■ In his challenge of the officers' search of his Pontiac vehicle parked in the carport, Fultz argues the officers violated Ark. R. Cr. P. 14.1, 12.2, 12.4, 12.6, and the Fourth Amendment. He also asserts his car search violated the Fourth Amendment tenets as set out by the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 433 (1971). There, Coolidge was questioned by officers about a murder, and about two weeks later he was arrested at his house for the murder. At the time of arrest, Coolidge's car was parked in his driveway and subsequently searched pursuant to a warrant which was later found defective. The legal issue then became whether the officers' search of Coolidge's vehicle could be justified as a warrantless search. In this respect, the Supreme Court mentioned the basic constitutional rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions. The Court added that the exceptions are jealously and carefully drawn, and there must be a showing by those who seek exception that the exigencies of the situation made that course imperative and that the burden is on those seeking the exception to show the need for it. *Id.* at 454–455.

■ The Court in *Coolidge* first considered the exception and principle that a warrantless search incident to a lawful arrest may generally extend to the area that is considered to be in the possession or under the control of the person arrested. The Supreme Court held that the search-incident doctrine had no applicability to the circumstances in Coolidge's situation because Coolidge was arrested inside his house while his car was outside in his driveway. In other words, Coolidge had no access to the car. In rejecting the validity of the officers' search of Coolidge's car, the Court adhered to the standards earlier announced in *United States v. Rabinowitz*, 339 U.S. 56 (1950), that a search may be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *Id.* at 56; *see also Chimel v. California*, 395 U.S. 752 (1969).

Ark. Rule 12.4(a) and (b) of the Rules of Criminal Procedure sets out the search-incident doctrine as follows:

> (a)  If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b)  The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

■  Here, unlike the circumstances in *Coolidge*, the accused Fultz was outside his house in his carport where his car was parked when he was arrested, searched, and was found with marijuana in his pocket.  When asked if he had any guns, he said yes and said he thought a derringer might be in his car.  At this stage of Fultz's arrest, officers had found marijuana on Fultz's person, knew he probably had a gun in his nearby parked car, and also had two-day-old information that Fultz used his car to transport drugs into the state.  Consequently, these circumstances reasonably justified a belief on the part of the officers that the car contained things which were connected with the offense for which the arrest was made.

■  We simply do not agree with Fultz's contention that, even though he may have been standing close to his car when he was arrested, it is not reasonable to conclude that the interior of his car was within his immediate control.  The rule, of course, required him to be in the "immediate vicinity" of his vehicle of which he was in "apparent control."  The evidence reflects these factors were met, along with proof showing the arresting officers had a reasonable belief justifying Fultz's car contained drugs and a gun, since they knew Fultz used the car to transport drugs and he told the officers he thought one of his guns — a derringer — was in the parked car.

■ Finally, we again point out that Fultz does not question the validity of his arrest or the State's search and seizure of a large amount of illegal drugs found in his possession. He only attacked the validity of the officers' warrantless search that produced Fultz's firearms, which were used to convict him of the two charges of simultaneous possession of controlled substances and criminal use of a prohibited weapon. Because we hold the trial court was correct in finding the officers' warrantless search of Fultz's car, producing an illegal sawed-off shotgun, valid, we necessarily conclude the evidence was sufficient to sustain the two convictions challenged in this appeal. Accordingly, we affirm.