Delcie FULTZ *v.* STATE of Arkansas

CR 98-41

972 S.W.2d 222

Supreme Court of Arkansas
Opinion delivered June 18, 1998

*Young & Finley*, by: *Dale W. Finely*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. On June 30, 1997, appellant, Delcie Ruth Fultz, was convicted in the Boone County Circuit Court of (1) conspiracy to deliver the controlled substance methamphetamine; (2) possession of a controlled substance with the intent to deliver methamphetamine; and (3) possession of drug paraphernalia. On appeal, Fultz first challenges the trial court's admission of evidence obtained during a warrantless search of her husband's Pontiac Firebird. She also argues that the trial court erred in admitting evidence obtained pursuant to a search warrant that was based, in part, on suppressed evidence retrieved during a warrantless search of her purse. Second, Fultz contends that the trial court applied an erroneous standard for determining whether the Pontiac search was consensual. Third, Fultz argues that the trial court erred by failing to direct verdicts on the criminal-conspiracy and possession-with-intent-to-deliver charges. Fourth, she assigns as error the trial court's admission of four witnesses' testimony that she claims is inadmissible pursuant to Ark. R. Evid. 404(b).

The issues on appeal involve the interpretation of the Fourth Amendment of the United States Constitution, Article 2, section 15, of the Arkansas Constitution, and Ark. R. Evid. 404(b). Significantly, the State urges us, in interpreting the "plain-view" exception to the Fourth Amendment's warrant requirement, to hold that Arkansas' constitutional requirements regarding that exception should be construed consistently with *Horton v. California*, 496 U.S. 128 (1990), because the Arkansas constitution provides no greater protection than the Fourth Amendment. Formerly, we have declined to reach the issue of whether inadvertent discovery is an element of the plain-view exception under the Arkansas Constitution. *See Wofford v. State*, 330 Ark. 8, 25, 952 S.W.2d 646 (1997); *Williams v. State*, 327 Ark. 213, 219, 939 S.W.2d 264 (1997). However, in light of the facts in the instant case, we now hold, consistent with *Horton*, that the Arkansas Constitution does not prohibit the warrantless seizure of evidence in

plain view even though the discovery was not inadvertent. Moreover, finding no merit in appellant's arguments, we affirm.

On September 3, 1996, Delcie Fultz's husband, Anthony Wayne Fultz[1], admitted to police that his Pontiac Firebird was purchased with drug money and that it had been used to transport methamphetamine from California. On September 5, 1996, Harrison Police Department officers obtained a warrant for Mr. Fultz's arrest, went to his home, and arrested him somewhere in the vicinity of his carport-kitchen door. Although witnesses' testimony conflicts as to the precise location of the vehicle and whether it was within the curtilage of the home, Mrs. Fultz concedes that the vehicle was in "plain view" at the time of the arrest. One police officer testified that the car was "right there" when Mr. Fultz was arrested.

After Mr. Fultz informed police that there might be a gun in the Pontiac, the officers seized the car and searched it pursuant to the Harrison Police Department's vehicle inventory policy. Although the record in Mr. Fultz's case indicates that he consented to the search of the car, the instant record is unclear as to consent. In any event, the search was conducted at the Fultz's residence and revealed, among other things, a sawed-off .410 shotgun, a semi-automatic AK rifle, and a pair of walkie-talkies. The officers also noted a strong odor of methamphetamine in the car.

During the search of Mr. Fultz's car, Mrs. Fultz became belligerent and shouted profanities at the officers. She was questioned about any further firearms, particularly Mr. Fultz's service revolver because he was a former police officer. She permitted one officer to come into the home to retrieve that gun. Two other officers followed, allegedly to protect the department's "reputation" since a female subject was involved. At some point, one

---

[1] During a separate trial involving the same incident, Mr. Fultz was convicted of (1) possession of methamphetamine with intent to deliver; (2) simultaneous possession of drugs and firearms; (3) conspiracy to deliver methamphetamine; (4) criminal use of a prohibited weapon; and (5) possession of drug paraphernalia. Specifically challenging the seizure and search of the Pontiac, Mr. Fultz appealed from his simultaneous-possession-of-drug-and-firearms and criminal-use-of-a-prohibited-weapon convictions. We affirmed those convictions in *Fultz v. State*, 332 Ark. 623, 966 S.W.2d 892 (1998).

of the officers requested permission to search Mrs. Fultz's purse. The police conducted a warrantless search of the purse, while Fultz remained silent. From the purse, the officers retrieved some plastic, square, clear boxes, which appeared to contain some white residue, purportedly methamphetamine. This evidence was identified and described in a subsequent affidavit for a search warrant.

When the police began to take Mr. Fultz to the station, Mrs. Fultz began to shout at the officers and threw a plastic glass. She was arrested for disorderly conduct and taken, in the Pontiac, to the police department. At this point, officers obtained a search warrant to search the home, including a small building located approximately forty to sixty feet from the house. Inside that building, police discovered cash, chemical residue, jars that tested positive for methamphetamine, documents including telephone numbers and evidence of drug trafficking, and evidence of a methamphetamine lab.

Mrs. Fultz objected to the evidence obtained pursuant to the search warrant because the warrant was based in part on the suppressed evidence discovered in her purse. Although the trial court suppressed evidence relating to the purse search, it found that the search warrant was valid and permitted admission of evidence obtained during the search of the car and the outbuilding. The trial court, over appellant's objection, also admitted testimony of four witnesses evidencing appellant's prior sales and concealment of methamphetamine. From these findings and appellant's convictions, comes the instant appeal.

## I.   Admission of Evidence

*A.   Warrantless Search of Pontiac*

First, Fultz challenges the trial court's refusal to suppress evidence found in her husband's Pontiac Firebird. Specifically, she argues that the search and seizure violated her federal and state constitutional rights. Notably, Article 2, section 15, of the Arkansas Constitution provides the same degree of protection as the Fourth Amendment. *See Stout v. State,* 320 Ark. 552, 557-58, 898 S.W.2d 457 (1995). When we review a trial court's denial of a motion to suppress evidence, we view the evidence in

the light most favorable to the State, make an independent determination based on the totality of the circumstances, and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Wofford*, 330 Ark. at 17.

█ As a general rule, searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established exceptions. Those who seek to prove an exception must demonstrate that the exigencies of the situation made that course imperative and the burden is on that party to show its need. *Fultz*, 332 Ark. at 626 (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (plurality opinion)). Moreover, when the appeal involves a challenge to the legality of a warrantless search and seizure, the State has the burden of establishing an exception to the warrant requirement. *See Wofford*, 330 Ark. at 17.

█ Here, the State asserts that the officers were entitled to seize the Pontiac pursuant to the plain-view exception to the Fourth Amendment's warrant requirement. When police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime. *Arizona v. Hicks*, 480 U.S. 321 (1987); *Coolidge*, 403 U.S. at 464-74. Significantly, even if the police did not inadvertently discover the object, the seizure does not violate the Fourth Amendment. *Horton*, 496 U.S. 128 (1990).

█ Similarly, the Arkansas Constitution provides the same constitutional safeguards as the Fourth Amendment. Assuming that the police do not violate the Fourth Amendment in arriving at the place where the object can be plainly viewed, to justify a warrantless seizure, first, the object must be in plain view and its incriminating character must be "immediately apparent." Second, the officer must be lawfully located in a place to plainly view the object and must have a lawful right of access to the object. *See Horton*, 496 U.S. at 136-37. In short, inadvertent discovery is not a requirement of a warrantless seizure of evidence in plain view,

and Article 2, section 15, of the Arkansas Constitution, is not violated merely because the discovery was not inadvertent.

■ Given the evidence that two days prior to the officers' seizure and search of the car, Mr. Fultz admitted that he had used the car to transport methamphetamine from California and had paid for the Pontiac with drug money, the officers had probable cause to believe that the car was evidence of a crime and an instrumentality of a crime. Acting under the authority of an arrest warrant, the police were lawfully on the premises and in close proximity to the car at the time of arrest. Mr. Fultz's indication to the police that a gun might be in the car provides additional compelling evidence. The officers were then entitled to perform an inventory search of the car after having legally seized it pursuant to the plain-view exception. In sum, given the totality of the circumstances, the trial court's admission of the evidence seized pursuant to the Pontiac search was not clearly against the preponderance of the evidence.

*B.   The Search Warrant*

■ Next, Mrs. Fultz challenges the validity of the search warrant and the admission of all evidence retrieved pursuant to it because the suppressed evidence discovered in her purse provided part of the probable cause for the affidavit for the search warrant. Although our initial inquiry might be whether the purse search was valid, assuming, *arguendo*, that it was invalid, we must determine whether the inclusion of that evidence in the affidavit defeats the warrant. In *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997), this court held that offending information can be excised from a probable-cause affidavit to determine if the affidavit nevertheless supports the issuance of a search warrant, and evidence may be admissible if discovered through an independent source. *Id.*, at 220 (citing *Murray v. United States*, 487 U.S. 533 (1988)). However, the warrant can be defeated if the officer's motivation for the warrant arose from evidence discovered during the illegal search. This court also noted in *Williams* that the "relative probative import" of the illegally obtained information should be considered as compared to "all other information known to the officers." *Id.*,

at 221 (citing *Murray*, 487 U.S. 533; *United States v. Restrepo*, 966 F.2d 964 (5th Cir. 1992), *cert. denied*, 506 U.S. 1049 (1993)).

■ Applying these factors in the instant case and excising the evidence discovered in the purse, the search warrant was, nevertheless, independently supported by probable cause. When viewed in the light most favorable to the State, the evidence in the purse was of little probative value compared to all of the other information known by the officers. For example, based on Mr. Fultz's statements and the smell in the car, there was ample information to independently support the warrant. Arguably, the evidence in the purse was of so little probative value that neither the purse nor its contents were seized. The trial court did not err in finding that the evidence in the purse was not the primary motivation for the officer's obtaining a warrant. Accordingly, its refusal to suppress the evidence found during the execution of the search warrant was not erroneous.

## II. Consent

■ We do not reach the merits of appellant's second point on appeal, challenging the trial court's finding that consent had been given to the Pontiac search. Neither do we consider the trial court's denial of appellant's motion to suppress the evidence found during that search. Although consent is a valid justification to a warrantless search, we have held that the instant seizure and inventory search of the Pontiac was valid under the plain-view doctrine. Accordingly, the issue of consent is irrelevant.

## III. Sufficiency of Evidence

### A. Conspiracy to Deliver Methamphetamine

■ At the conclusion of the State's case the appellant moved for the trial court to dismiss the conspiracy charge, arguing that there was "no proof of a conspiracy." The State correctly contends that Fultz failed to preserve this issue for appeal. A general motion for directed verdict does not preserve for appeal issues regarding sufficiency of the evidence. *See Walker v. State*, 318 Ark. 107, 109, 883 S.W.2d 831 (1994). Fultz's directed-verdict motion failed to advise the trial court of any specific element of the crime

of conspiracy that the State failed to prove. Accordingly, we affirm the trial court on this point.

### B.  Possession of Methamphetamine with Intent to Deliver

When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *See Freeman v. State*, 331 Ark. 130, 131-32, 959 S.W.2d 400 (1998). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id.* When viewed in the light most favorable to the State, we hold that the trial court had substantial evidence to support the possession-with-intent-to-deliver conviction.

First, the evidence demonstrated that Fultz had at least constructive possession over the drugs. According to *Darrough v. State*, 330 Ark. 808, 811, 957 S.W.2d 707 (1997), the State need not prove that the accused physically possessed the contraband to sustain a possession conviction. Indeed, if the location of the contraband was under the dominion and control of the accused, it is deemed constructively possessed. *Id.* (citing *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994); *Crossley v. State*, 304 Ark. 378, 802 S.W.2d 459 (1991)). Although constructive possession can be implied when the contraband is in the joint control of the accused and another, joint occupancy, alone, is insufficient to establish possession or joint possession. Under the instant facts, the State must prove some additional factor linking the appellant to the contraband. *See id.* Specifically, the State must prove that the appellant exercised care, control, and management over the contraband, and that she knew the matter possessed was contraband. *See id.* (citing *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995); *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988)).

Here, the State offered evidence showing that Fultz helped her husband transport, conceal, and sell methamphetamine. For example, Roger Brown testified that appellant sold him methamphetamine in the earlier part of 1996, and that appellant told him that she was going to pick her husband up at the

airport when he returned to Arkansas from a drug pick-up in California. Jason Smith testified that appellant sold him methamphetamine six to seven months prior to appellant's trial. Additionally, Tiffany Cox testified that she held some of appellant's methamphetamine for four days while Mrs. Fultz went to California to get her husband, who had been met there by Drug Enforcement Agency officers. Cox also testified that when appellant returned, she gave Cox an eight-ball of methamphetamine in exchange for holding the drugs. Cox's testimony regarding the temporary concealment also demonstrated that appellant knew that the methamphetamine was contraband. Accordingly, viewed in the light most favorable to the State, the evidence was sufficient to support the conviction.

## IV. Rule 404(b) Evidence

██ ██ Finally, appellant argues that the trial court erred in admitting the testimony of four witnesses: Roger Brown, Joe Falconburg, Jason Smith, and Tiffany Cox. As to Messrs. Brown and Falconburg, the appellant failed to object to their testimony and, thus, has not preserved those issues for appeal. *See Mackey v. State*, 329 Ark. 229, 231, 947 S.W.2d 359 (1997). Accordingly, the trial court's admission of their testimony is affirmed. However, appellant made timely objections to Mr. Smith's and Miss Cox's testimony based on Rule 404(b), which provides that evidence of other crimes, wrongs, or acts is generally inadmissible to prove character and to demonstrate that a person has acted in conformity with that character. Alternatively, Rule 404(b) provides that such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Moreover, in a conspiracy case, evidence of an accused's prior crimes may be admissible under Rule 404(b) as direct evidence of the accused's participation in the conspiracy. *See Henry v. State*, 309 Ark. 1, 7, 828 S.W.2d 346 (1992). On appeal, we will not reverse a trial court's decision regarding admission of evidence absent a manifest abuse of discretion. *Munson v. State*, 331 Ark. 41, 48-9, 959 S.W.2d 391 (1998) (citing *Jarrett v. State*, 310 Ark. 358, 833 S.W.2d 779 (1992)).

Here, Smith and Cox testified regarding Mrs. Fultz's participation in a conspiracy to deliver methamphetamine and her intention to possess and deliver methamphetamine. Specifically, Smith testified that appellant sold him methamphetamine seven months before appellant's trial, and Cox testified that appellant concealed methamphetamine with her during the time her husband was under investigation. In light of this testimony, the trial court could properly find direct evidence of appellant's participation in the conspiracy. Accordingly, under these facts, the trial court did not

In conclusion, we affirm the trial court on all points.