Randolph McDONALD  *v.*  STATE of Arkansas

CA CR 03-957 210 S.W.3d 915

Court of Appeals of Arkansas
Opinion delivered June 22, 2005

*Laura Lee Cunningham*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Chief Judge. The appellant in this criminal case entered a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3(b) to possession of methamphetamine found in a search of his automobile conducted after his arrest. On appeal, he asserts that there was no valid basis to perform an inventory of his automobile and argues that the trial court therefore erred in denying his motion to suppress evidence obtained from the automobile following his arrest. We affirm.

The record shows that the owner of Johnson's Automotive called police to report that appellant had driven by that business several times, leading the owner to suspect that appellant would attempt to remove one of appellant's automobiles from impound after the business closed for the night. A check disclosed that there were outstanding warrants for appellant's arrest for violation of the Arkansas Hot Check Law and for failure to pay child support, and an officer was dispatched to make contact with him. The officer saw appellant driving on Route 23 and attempted to stop him by engaging the emergency lights and siren of his patrol car. Appellant indicated by waving his hand and pointing out the window that he saw the officer but, instead of stopping in a nearby parking lot as directed, he continued driving, turned onto Benton Street, and parked on the street in front of his home. Appellant exited his car and was arrested on the outstanding warrants. Officers immediately performed an inventory of appellant's automobile at the scene and discovered in a jacket in the front seat the methamphetamine that he was convicted of possessing in this case.

On appeal, appellant contends that there was no reasonable need to secure his automobile and its contents because it was parked in front of his home, and that the items discovered in his car therefore should have been suppressed as the fruits of an illegal search. Where the validity of a warrantless search is in issue, this court makes an independent determination, based on the totality of the circumstances, whether the evidence obtained by means of a warrantless arrest or search should be suppressed. The trial court's

finding will not be set aside unless it is found to be clearly against the preponderance of the evidence. As the preponderance of the evidence turns heavily on the question of credibility, we defer to the superior position of the trial court in making the determination of which evidence is to be believed. *Folly v. State*, 28 Ark. App. 98, 771 S.W.2d 306 (1989).

As a general rule, all searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Kirk v. State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992). The burden is on the State to establish an exception to the warrant requirement. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Izell v. State*, 75 Ark. App. 377, 58 S.W.3d 400 (2001).

One recognized exception is the so-called "inventory search" of an automobile, which permits police officers to conduct a warrantless inventory of a vehicle that is being impounded in order to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Bratton v. State*, 77 Ark. App. 174, 72 S.W.3d 522 (2002); *see* Ark. R. Crim. P. 12.6(b). However, the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies; an inventory "may not be used as a guise for 'general rummaging to discover incriminating evidence.' " *Bratton v. State*, 77 Ark. App. at 177-78, 72 S.W.3d at 525 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). Although the fact that a vehicle is legally parked does not necessarily negate the need to take the vehicle into protective custody, *Folly v. State, supra*, factors such as hazard to public safety, possibility of vandalism, and the risk of theft are to be considered when determining whether protective custody is necessary. *Izell v. State, supra*.

In the present case, we need not decide whether the State demonstrated circumstances justifying an inventory because a search of the passenger compartment of appellant's automobile was clearly permitted under the facts of this case as an incident of appellant's arrest. We will affirm the trial court if it is correct even though the court states the wrong reason for its ruling, and this principle has been applied in cases where the issue was the validity of a search. *See, e.g., Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998); *McKenzie v. State*, 69 Ark. App. 186, 12 S.W.3d 250 (2000); *Hicks v. State*, 28 Ark. App. 268, 773 S.W.2d 113 (1989).

The United States Supreme Court has held that, when a police officer makes a lawful custodial arrest of an automobile's occupant or recent occupant, the Fourth Amendment allows the officer to search the vehicle's passenger compartment and containers found therein as a contemporaneous incident of arrest. *New York v. Belton*, 453 U.S. 454, 460-61 (1981). The justification for the search is not that the arrestee has no privacy interest in the vehicle's passenger compartment but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. *Id*. This rule is not limited to situations where the police officer makes contact with the occupant while the occupant is inside the vehicle, but also applies in cases where a recent occupant of a vehicle is first contacted and arrested in close proximity to the vehicle. *Thornton v. United States*, 541 U.S. 615, 622 (2004). Our review of the totality of the circumstances leads us to conclude that the officer initiated contact with appellant while appellant was occupying his vehicle, and that appellant was clearly at least a recent occupant of his vehicle and in close proximity to his vehicle when he was placed under arrest; indeed, he had just stepped out of the car after being stopped by the officer. The search of the passenger compartment of that vehicle clearly was authorized under both *New York v. Belton, supra*, and *Thornton v. United States, supra*, and thus was permissible under the federal constitution.

Likewise, we think that the search of the vehicle incident to appellant's arrest was proper under Arkansas law. As Judge Hart correctly notes in her dissent, article 2, section 15 of the Arkansas Constitution provides protection against unreasonable searches similar to that of the Constitution of the United States, and Arkansas courts are not bound by the federal interpretation of the Fourth Amendment when interpreting our own law. However, the Arkansas Supreme Court has considered this precise issue and expressly declined to depart from federal interpretation in the vehicular search-incident-to-arrest context, noting that it has long followed the rule enunciated in *New York v. Belton* and has found it to provide a practical and workable rule. *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995); *see State v. Sullivan*, 348 Ark. 647, 650-51, 74 S.W.3d 215, 217-18 (2002). Consequently the term "unreasonable search" as employed in article 2, section 15 of the Constitution of Arkansas is to be interpreted in the same manner the United States Supreme Court interprets the Fourth Amendment to the Constitution of the United States. *Stout*, 320 Ark. at

555-56, 898 S.W.2d at 460. Furthermore, the *Stout* court expressly rejected the argument that the Arkansas Rules of Criminal Procedure provide greater protection against unreasonable searches than does the Fourth Amendment in this context. The court noted that, although Rule 12.4, standing alone, does provide a more narrow definition of a reasonable search than does *Belton,* Rule 12.1 embraces the *Belton* rationale and allows the search of the passenger compartment of a car incident to a lawful custodial arrest without regard to whether the circumstances warrant a reasonable belief that the vehicle contains things connected with the offense for which the arrest was made. *Stout,* 320 Ark. at 556, 898 S.W.2d at 460-61.

Judge Neal, in his dissent, asserts that there must be some relationship between the vehicle and the reason for the arrest to support a valid search of the vehicle incident to the occupant's arrest. No authority for this assertion is cited, and it is therefore difficult to address with specificity, but we note that the United States Court of Appeals for the Eighth Circuit appears to be unaware of any such principle. In circumstances similar to those presented here, that court upheld the search of the automobile recently driven by a man arrested on an outstanding arrest warrant for assault as a valid search incident to his arrest. *United States v. Poggemiller,* 375 F.3d 686 (8th Cir. 2004). In any event, the qualification that Judge Neal would place upon the *Belton* rule is plainly one that neither the United States Supreme Court nor the Arkansas Supreme Court has ever stated. Rather, *Belton* unqualifiedly holds that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton,* 453 U.S. at 460.

In his dissent, Judge Griffen argues that the search of a vehicle may be conducted as an incident of the occupant's arrest only where there is reasonable cause to believe that the search will yield evidence of a crime. He is wrong. There is a distinction, apparently widely misunderstood, between the various legal principles governing searches of moveable vehicles. One such set of principles, established by the United States Supreme Court in *Carroll v. United States,* 267 U.S. 132 (1925), has been called the "automobile exception" to the warrant requirement. The permissible scope of a search conducted pursuant to the automobile exception is dependent upon circumstances like those that the dissenting judges assert are required in the present case:

> [T]he scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*United States v. Ross*, 456 U.S. 798, 825 (1982). The automobile exception, however, is not involved in the present case. Neither is the plain view doctrine being relied upon, *see McDonald v. State,* 354 Ark. 216, 119 S.W.3d 41 (2003), or the principles applicable when the occupant of the vehicle consents to the search, *see Duncan v. State,* 304 Ark. 311, 802 S.W.2d 917 (1991).[1]

Judge Griffen also argues that this case is similar to *Izell v. State,* 75 Ark. App. 377, 58 S.W.3d 400 (2001), where this court held that a search of a car parked in a driveway was not a valid search incident to arrest. However, the appellant in that case was inside his parents' home when he was arrested, and had been for thirty to forty-five minutes before the police arrived and were admitted inside. To the extent of its holding regarding search incident to arrest, *Izell* is distinguishable from the case now before us.

Despite the assertions to the contrary made by some of the dissenting judges, the law upon which we rely is well-established and has been in effect for many years. In *Chimel v. California*, 395 U.S. 752 (1964), the United States Supreme Court declared that, when an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape, and to search for and seize any evidence on the arrestee's person in

---

[1] "Unfortunately, lawyers and judges who have taken the words 'automobile exception' literally have created considerable confusion about the parameters of the *Carroll* decision and its progeny. The exception is neither limited to automobile searches, nor does it cover all searches of automobiles. . . . Many warrantless searches of movable vehicles are properly analyzed only in terms of other exceptions to the Fourth Amendment's warrant requirement. For example, . . . a search of all or part of an automobile may be justified *independently* of the automobile exception if conducted *incident to a lawful arrest,* in performing a stop and frisk of a car's occupants, under the authority of the plain view doctrine, while inventorying a car, or upon the consent of car's occupant. Other constitutional searches of automobiles may not involve the Fourth Amendment at all." Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure* 179-80 (3d ed. 1992) (emphasis added) (internal footnotes omitted).

order to prevent its concealment or destruction. In *United States v. Robinson*, 414 U.S. 218 (1973), the Supreme Court reversed a decision of the District of Columbia Court of Appeals holding that a search made incident to arrest was unreasonable because the officer's interest in self-protection could have been met by only a frisk of the arrestee, and because there was no evidence to be found given that he was arrested for driving while his license was revoked. Noting that its fundamental disagreement with the court of appeals arose from the latter's suggestion that it was necessary to litigate, in every case, the issue of whether a search incident to arrest was necessary to secure evidence or ensure officer protection, the *Robinson* Court wrote that:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.* It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson*, 414 U.S. at 235 (emphasis added). Stated another way, a search incident to a lawful custodial arrest may be made consistent with the Fourth Amendment "whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence." *United States v. Chadwick*, 433 U.S. 1, 14 (1977).

In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court extended the doctrine in *Robinson* to allow the search of the entire passenger compartment of a vehicle as a contemporaneous incident of a valid arrest of an occupant or recent occupant of the vehicle. In so doing, it clearly explained the factors upon which its decision was based:

Although the principle that limits a search incident to a lawful custodial arrest may be stated clearly enough, courts have discovered the principle difficult to apply in specific cases. Yet, as one commentator has pointed out, the protection of the Fourth and Fourteenth Amendments "can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement." LaFave, "Case-By-Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma, 1974 S.Ct.Rev. 127, 142. This is because "Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.' " Id., at 141. In short, "[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Dunaway v. New York*, 442 U.S. 200, 213-214 So it was that, in *United States v. Robinson*, 414 U.S. 218, the Court hewed to a straightforward rule, easily applied, and predictably enforced: "[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.*, at 235. In so holding, the Court rejected the suggestion that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Ibid.*

*Belton*, 453 U.S. at 458-59. For the same pragmatic reasons, the Supreme Court in *Thornton v. United States*, 541 U.S. 615 (2004), refused to adopt a different rule to apply in cases where the suspect is arrested outside a vehicle he recently occupied:

Under petitioner's proposed rule, an officer approaching a suspect who has just alighted from his vehicle would have to determine whether he actually confronted or signaled confrontation with the

suspect while he remained in the car, or whether the suspect exited his vehicle unaware of, and for reasons unrelated to, the officer's presence. This determination would be inherently subjective and highly fact specific, and would require precisely the sort of ad hoc determinations on the part of officers in the field and reviewing courts that *Belton* sought to avoid. *Id.*, at 459-460, 101 S.Ct. 2860. Experience has shown that such a rule is impracticable, and we refuse to adopt it. So long as an arrestee is the sort of "recent occupant" of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest.

*Thornton*, 541 U.S. at 623. The Arkansas Supreme Court adopted the rationale of *Belton* as applicable to the Arkansas Constitution precisely because it was a practical and workable rule. *See Stout v. State, supra; State v. Sullivan, supra.*

The dissenting judges, perhaps hungering for that "heady stuff upon which the facile minds of lawyers and judges eagerly feed" described by the *Belton* Court, would reject the simple, straightforward, easily-applied, and predictably-enforced standard enunciated in that case in favor of a standard so nebulous that they themselves cannot precisely define it. Their position is not the law.

The trial court reached the right result, and we therefore affirm.

Affirmed.

ROBBINS, VAUGHT, CRABTREE, and BAKER, JJ., agree.

HART, GLADWIN, GRIFFEN, and NEAL, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I wholeheartedly agree with Judge Neal's well-reasoned dissent and share his philosophy concerning the role of the courts as that of being the protector of our individual liberties. I write separately to note one additional problem.

The majority purports to affirm the trial court for reaching the right result, even though it states the wrong reason. This is certainly a legitimate convention, and indeed, one that we are bound to follow. However, if we resort to this practice it is incumbent upon us to make sure that we review the entire body of relevant law and select the correct principle of law to rely upon.

In relying on *New York v. Beltron*, 453 U.S.454 (1981) and *Thornton v. United States*, 541 U.S. 615 (2004), the majority has ignores the fact that our supreme court tends to interpret Article 2,

section 15, of the Arkansas Constitution in a manner that provides greater protection to the people of this state than the United States Supreme Court's interpretation of the Fourth Amendment. *See, e.g., Woolbright* v.State, 357 Ark. 63, 160 S.W.3d 315 (2004) (knock and talk); *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004) (knock and talk); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002) (nighttime search); *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215, (2002) (pretextual arrest). Had the majority not ignored Arkansas law, undoubtedly they would have noted that the search of Mr. McDonald's car did not comport with Rule 12.4 of the Arkansas Rules of Criminal Procedure.

Rule 12.4 states:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

Simply stated, nowhere in the record is there an indication that the police had any belief, much less a reasonable one, that Mr. McDonald's car contained anything connected with the hot check charges for which he was being arrested. Accordingly, the methamphetamine that the police discovered in their unlawful search should have been suppressed, and this case should have been reversed.

I respectfully dissent.

WENDELL GRIFFEN, Judge, dissenting. I agree with Judge Neal that the cases cited by the majority do not justify affirmance because in each of those cases, there was a nexus between the vehicle and the arrest that is sorely lacking in the instant case. Therefore, I join his dissent.

I also write separately to emphasize that by affirming a search where there was no nexus between the vehicle and the arresting conduct and where there was no need to safeguard the vehicle or

its contents, the majority has created a new and dangerous precedent which seems to allow police to conduct an at-will search of the vehicle of any recent occupant who is arrested near the vehicle. The majority affirms the search here on the minimal facts that "appellant was clearly at least a recent occupant of his vehicle and in close proximity to his vehicle when he was placed under arrest." In doing so, it transforms appellant's arrest for hot checks and non-payment of child support into a pretext for an illegal search for drugs — illegal because the search was neither justifiable as a search incident to arrest or as an inventory search.

I cannot join the majority's decision because it lowers the State's burden of proof required to demonstrate that a warrantless search has been reasonably conducted and ignores the requirements of our federal and state law and rules of criminal procedure. The majority condones the search of a vehicle where the defendant was arrested outside the vehicle, where he gave no consent to have the vehicle searched, where there was no nexus between the vehicle and the criminal conduct upon which the arrest is based *or any other crime*, where there was no objective basis to believe that the vehicle posed a threat to the public or to the officers, and where there was no reason to believe the search was necessary to safeguard the vehicle or its contents. *See Knowles v. Iowa*, 525 U.S. 113 (1998); Ark. R. Crim. P. 12.1; Ark. R. Crim. P. 12.4; Ark. R. Crim. P. 12.6.

Because a warrantless search of a vehicle is presumptively unconstitutional, the burden is on the State to show legal justification for the warrantless search. *Saul v. State*, 33 Ark. App. 160, 803 S.W.2d 941 (1991). There are two historical rationales for the search incident to arrest exception to the warrant requirement, neither of which is present in this case: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial. *Knowles v. Iowa, supra*. The United States Supreme Court adopted a bright-line rule regarding warrantless searches incident to lawful arrests in *New York v. Belton*, 453 U.S. 454 (1981). The *Belton* court held that when a police officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. However, the scope of the search must be strictly tied to and justified by the circumstances. *Id.* Moreover, an arrest may not be used as a pretext to search for evidence of other crimes; where the search and not the arrest is the officer's true objective, the search is not a

reasonable one within the meaning of the Constitution. *Richardson v. State*, 288 Ark. 407, 706 S.W.2d 363 (1986); *Izell v. State*, 75 Ark. App. 377, 58 S.W.3d 400 (2001).

We have heretofore never interpreted *Thornton v. United States*, 541 U.S. 615 (2004), *New York v. Belton, supra, United States v. Chadwick*, 433 U.S. 1 (1977), or *United States v. Robinson*, 414 U.S. 218 (1973), in the manner that the majority does today, which divorces an officer's authority to conduct a warrantless search of a vehicle from the applicable laws and rules of criminal procedure governing such a search. Neither *Chadwick* nor *Robinson* involved the search of an automobile. As Judge Neal notes in his dissent, in *Thornton* and *Belton* the vehicles were related to the criminal activity that led to the stop or arrest in those cases. Thus, neither *Thornton* nor *Belton* stand for the bald proposition that an officer may search the vehicle of a person who is arrested near his vehicle simply because the person "was clearly a recent occupant of his vehicle."

Prior to today's decision, our jurisprudence concerning searches of vehicles incident to arrest or inventory searches has typically involved situations in which operation of the vehicle itself provided probable cause, such as during the commission of a traffic violation; or where the defendant gave consent to search, the officer saw something in plain view in the vehicle, or the officer smelled an incriminating odor. *See, e.g., MacDaniel v. State*, 337 Ark. 431, 990 S.W.2d 515 (1999) (suspect stopped for crossing center line, officer smelled marijuana, and the defendant gave consent to search); *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995) (suspect stopped for crossing center line and officer saw marijuana roach in plain view in the front seat). The majority cites the general law governing searches incident to arrest, but, tellingly, cites no Arkansas case in which we have upheld a search, as either a search incident to arrest or as an inventory search, where the vehicle was not related to the conduct for which a defendant was being arrested or to any other crime. Indeed, it appears that we have never before affirmed a search incident to arrest merely because the suspect was a recent occupant of his vehicle and was near his vehicle at the time of the arrest.

Searches and seizures performed incidental to an arrest are governed generally by Arkansas Rule of Criminal Procedure 12.1; searches of vehicles performed incidental to an arrest are governed specifically by Rule 12.4. However, an examination of those rules

reveals none of the factors that would justify a warrantless search in the instant case. Rule 12.1 provides:

Rule 12.1 Permissible purposes.

An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:

(a) to protect the officer, the accused, or others;

(b) to prevent the escape of the accused;

(c) to furnish appropriate custodial care if the accused is jailed; or

(d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Rule 12.4, in turn, provides:

Rule 12.4. Search of vehicles; permissible circumstances.

(a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

(b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

The majority briefly acknowledges the existence of these rules and states that Rule 12.1 allows the search of a passenger car "without regard to whether the circumstances warrant a reasonable belief that the vehicle contains things connected with the offense for which the arrest was made." This is a dangerously incomplete statement of the requirements of this rule. If an officer

has no reasonable cause to believe that items subject to seizure will be found in the car, then he may not search the car unless one of the other factors listed in the rule are present — the search is necessary to protect the officer, the accused, or others; to prevent the escape of the accused; or to furnish appropriate custodial care if the accused is jailed. The majority here, for all of its citations to authority, fails to demonstrate how any of the factors under 12.1 or 12.4 are met in this case.

In this case, appellant was arrested based on outstanding warrants for hot checks and non-payment of child support, but was convicted of possession of methamphetamine found in his jacket, which was located in his vehicle. The officers testified that they knew where appellant lived, so that when appellant waved they understood he was going to his house; Chief Earl Hyatt further stated that appellant had a tendency, when being stopped, to try to get to his house. Thus, the officers knew where appellant was going. There is not even the slightest indication that appellant was attempting to evade apprehension, flee, or disregard the officer's directive to stop. Appellant parked his vehicle on the street in the vicinity of his private residence and had been inside his home for thirty to forty-five minutes before he was arrested. Officer James Loudermilk testified that on the street where appellant lives most of the houses do not have off-street parking and that most people park on the side of the road, as appellant did. Loudermilk also testified that appellant did not give consent for the officers to search the car.

On these facts, it is clear that the search was not justified as a search incident to an arrest because none of the factors listed in *Knowles, supra*, Rule 12.1, or Rule 12.4 are present. First, there is no proof that the vehicle posed a safety threat to the police or to the public that would require its impoundment. The officers provided no testimony that the search of the vehicle was necessary to disarm appellant; *in fact, Hyatt began the inventory search before Loudermilk concluded his protective pat-down of appellant.* Moreover, neither officer testified that the vehicle was parked in an unsafe manner, in a location that made it dangerous to leave unattended, or was illegally parked. Instead, they testified that the vehicle was parked in the vicinity of appellant's home, on the side of a public street, consistent with the manner in which other residents who lived in the neighborhood parked their vehicles.

Second, there was no proof that the search was necessary to prevent appellant from escaping. He was already detained. Third,

because the vehicle was parked near appellant's home, there was no reason to search the vehicle to provide custodial care.

Fourth, appellant was arrested on warrants for hot checks and non-payment of child support, but the officers had no reason to believe that the vehicle contained any evidence related to those offenses; nor did the officers have reason to believe the vehicle contained evidence related to any other offenses. *Cf. Haygood v. State*, 34 Ark. App. 161, 804 S.W.2d 470 (1991) (affirming search of vehicle incident to arrest where, based on a reliable informant's tip, officers had reasonable cause to believe that the automobile contained items subject to seizure). Especially important, appellant's vehicle was not involved in any traffic violation. Loudermilk testified that he had not received any information that appellant was engaged in any illegal activity in driving by the automotive store and that he had received no reports that appellant was driving erratically. Hyatt did not recall whether appellant's tags had expired and said that he was not concerned about appellant's registration.

It is true that drugs, weapons, and other contraband are commonly found in vehicles and on a defendant's person or in his belongings. However, that reality does not prove that the officers in this case had a reasonable belief that evidence relating to the hot-check charges and non-payment of child support charge would be found in appellant's vehicle. The pretextual nature of the search in this case is vividly demonstrated by simply asking, on the instant facts, what evidence could any officer have reasonably believed would be found in appellant's vehicle that was related to the hot-check and non-payment charges? Is there any objective basis for thinking the officers would find a checkbook registry documenting that appellant had a negative balance at the time he wrote the specific checks that were returned for insufficient funds? What evidence the officers could have reasonably believed they would find relating to non-payment of child support, or any other charge, is even more difficult to fathom. The majority opinion fails to shed any light on this subject or to otherwise demonstrate how the search in this case is affirmable as a valid search incident to arrest. Respectfully, I contend that the majority opinion is silent because anything that might have been written to justify the search would have required sheer speculation.

This case is similar to *Izell v. State, supra*. In that case, we reversed a warrantless search where the defendant's vehicle was parked on private property, he was arrested on a minor offense, he

had already been restrained and patted down, and therefore, he posed no danger to the officers or to any evidence in the vehicle. We held that the arrest was neither a valid search incident to arrest nor a valid inventory search because no probable cause existed to assume the vehicle was related to any criminal activity, and because the vehicle, was, in fact, unrelated to the charge for which the defendant was being arrested — violation of a chancery court order prohibiting him from associating with his former girlfriend. *Id.*[1] We further held that because the vehicle was on private property, it posed no risk to public safety and was not likely to be in danger of tampering.

The only appreciable differences between the *Izell* case and the instant case is that appellant here was not arrested on private property and was arrested in the vicinity of his vehicle. However, those differences are not dispositive. First, even though the vehicle was not on private property, I am unaware of any rule or case law that states unless a vehicle is located on private property, then *ipso facto*, it is automatically in need of safeguarding, regardless of the attendant circumstances. Even where a vehicle is stopped on a public road or highway and searched under the exigent circumstances exception to the warrant requirement, the State must still prove probable cause to believe the search of the vehicle will yield contraband or evidence useful for prosecution of a crime. *Chambers v. Maroney,* 399 U.S. 42 (1975); *Tillman v. State,* 271 Ark. 552, 609 S.W.2d 340 (1980). In any event, there was no testimony by the officers that would establish that the vehicle or its contents needed safeguarding due to the location or manner in which it was parked. *Cf. Stephens v. State,* 342 Ark. 151, 28 S.W.3d 260 (2000) (affirming a search incident to arrest for hot-check charges where the defendant was arrested at a grocery store). Thus, the fact that the vehicle was located on a public street did not justify an inventory search in this case, especially where the vehicle was located in the vicinity of appellant's home.

---

[1] The police may perform an inventory search of a vehicle where a defendant is arrested at his home under certain circumstances. *Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998) (affirming inventory search of vehicle in plain view where police officers were lawfully on the defendant's premises and in close proximity to husband's vehicle at time of her arrest, where the husband had previously admitted that he used vehicle to transport methamphetamine, and indicated to officers that there may have been a gun in vehicle). The *Fultz* facts are obviously not applicable here, where, *inter alia,* there was no indication that the vehicle was related to any criminal activity.

Second, the fact that appellant was arrested near his vehicle is not dispositive because a suspect's proximity to a vehicle, even when combined with his recent occupancy of the vehicle, does not provide a reasonable belief that the vehicle contains contraband, fruits of a crime, evidence of the commission of the offense for which the accused has been arrested, or other things criminally possessed or used in conjunction with the offense. If that were the rule, then any recent occupant of a vehicle who is arrested near his vehicle, for any reason, would be subject to having his vehicle searched, and our current applicable federal and state laws concerning warrantless seizures would be meaningless. While that is the apparent rule that the majority would adopt, it is clearly not countenanced under the authorities noted herein.

Third, the majority attempts to distinguish *Izell* because the defendant in that case had been inside his parent's home for thirty to forty-five minutes before he was arrested. However, that fact does not minimize the applicability of the *Izell* case to the instant facts. The *Izell* court did not solely rely on the fact that the defendant was not a recent occupant of his car when he was arrested; the court also explicitly relied on the fact that there was no probable cause to believe that the vehicle contained any evidence of a crime because the *Izell* defendant was being arrested on a charge unrelated to his vehicle.

Thus, by affirming on the minimal facts that appellant was arrested near his car and was a recent occupant of his car, the majority here creates a new and draconian standard for analyzing the warrantless searches of automobiles that allows the State to sustain such searches on a lesser showing of proof than is required under federal law and Arkansas law. In short, the search of the vehicle in this case cannot be justified as a search incident to arrest because none of the factors supporting such a search were present.

Additionally, although not addressed by the majority, the search cannot be justified as an inventory search. The law governing inventory searches has been succinctly summarized as follows:

> It is well-settled that police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *see also, Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997). An inventory search, however,

may not be used by the police as a guise for "general rummaging" for incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *Welch v. State, supra*. Hence, the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies. *See Colorado v. Bertine, supra; Florida v. Wells, supra; Welch v. State, supra*. In *Welch v. State*, we clarified that these standard procedures do not have to be in writing, and that they may be established by an officer's testimony during a suppression hearing.

*Benson v. State*, 342 Ark. 684, 688, 30 S.W.3d 731, 733 (2000). Additionally, Arkansas Rule of Criminal Procedure Rule 12.6(b), governing inventory searches, provides: "A vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents."

Typically, we have upheld an inventory search on the basis that it was reasonably necessary for safekeeping purposes because the vehicle was stopped or abandoned in a public place. *See, e.g., Asher v. State*, 303 Ark. 202, 795 S.W.2d 350 (1990) (affirming inventory search of vehicle where driver was removed from the accident scene in semi-conscious state); *Cooper v. State*, 297 Ark. 478, 763 S.W.2d 645 (1989) (affirming inventory search of vehicle where narcotics suspect fled scene after attempting to shoot officer); *Lipovich v. State*, 265 Ark. 55, 576 S.W.2d 720 (1979) (affirming inventory search where the vehicle, reported as stolen, was found abandoned and was a hazard on a public highway); *Bratton v. State*, 77 Ark. App. 174, 72 S.W.3d 522 (2002) (affirming inventory search of a vehicle that had been involved in accident and left disabled on road after the defendant had been transported to hospital); *Colyer v. State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983) (affirming inventory search where the driver, a transient, was arrested on outstanding warrants and for being drunk on the highway, and where the vehicle lacked a license and was stuck in mud).

Inventory searches have also been affirmed where the search of the vehicle is related to the alleged criminal activity. *Chambers v. Maroney, supra* (affirming where the police had probable cause to believe that the robbers, carrying guns and fruits of crime, had fled the scene in the vehicle that was impounded and searched at the station house); *Lewis v. State*, 258 Ark. 242, 523 S.W.2d 920 (1975)

(affirming the warrantless search of an automobile where the search was closely related to reason defendant was arrested, the reason the automobile was impounded, and the reason it was being retained); *Cf. Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978) (reversing the warrantless seizure of a truck because the defendant was arrested for transporting controlled substances and there was no evidence that the particular truck had been used to transport controlled substances).

However, I found no other cases where we have affirmed an inventory search absent the need to safeguard the vehicle and its contents or where there was no connection between the vehicle and the crime for which the suspect was being arrested. Here, as noted previously, there was no evidence that the vehicle needed safeguarding, that it posed a public-safety hazard, or that it contained any evidence related to the hot-check and non-payment of child support charges. Accordingly, there is simply no evidence that it was "reasonably necessary" for the officers in this case to conduct an inventory search of appellant's vehicle for the purpose of safekeeping the vehicle or its contents.

While the police may impound a vehicle and inventory its contents without a warrant where the actions are taken in good faith and in accordance with standard police procedures, *Welch v. State, supra*, that does not appear to be what transpired in this case. In reversing in *Izell v. State, supra*, we found that the police department's policy of inventorying vehicles did not save the illegal search because the circumstances necessary to trigger the policy never existed in that case. Similarly, here there is no evidence that the search was performed pursuant to any established departmental policy, because there is no proof that the police department had implemented a policy directing a search of a vehicle in this situation. To the contrary, Hyatt testified that the departmental policy was to perform inventory searches where a person is arrested outside of his vehicle and where "the vehicle was out on public property or out somewhere." Clearly, that was not the case here, where appellant's vehicle was parked on the street in the vicinity of his home.

This decision is especially troubling for another reason. Public respect for the law, and the people who perform the important work of law enforcement, is closely related to public confidence that the people who enforce our laws are themselves accountable for respecting civil liberties. When police officers and agencies disregard civil liberties, well-established rules of criminal

procedure, and their own internal practices, the public is entitled to look to courts and judges for vindication of those basic liberties.

It is a deeply troubling situation when courts and judges uphold police conduct that violates fundamental civil liberties and do so in the face of longstanding judicial precedent. When the public cannot trust the police to respect civil liberties or trust courts and judges to uphold those liberties, a society runs dangerously close to becoming a police state. No police officer, agency, judge or court ever admits preference for a police state. Rather, liberty is lost, as Judge Neal's dissent observes, by degrees. Today's decision is not a mere wayward step down a slippery slope; it is a running, head-first leap into an unconstitutional abyss. Even the members of the majority cannot fathom the depth of the judicial hole that this decision creates. We should not expect the public to respect a decision so clearly out-of-step with all known standards for judging the validity of warrantless vehicular searches.

In responding to my dissent, the majority has misapprehended my position. First, the majority states that my position is "wrong," then cites to the automobile exception, which it then concedes is inapplicable. Nowhere in my opinion do I assert that the automobile exception applies in this case. Next, the majority asserts that I argue that "the search of a vehicle may be conducted as an incident of the occupant's arrest only where there is reasonable cause to believe that the search will yield evidence of a crime." Nowhere in my argument do I assert this proposition.

Instead, while noting that we have yet to affirm a search in which the vehicle was not related to the arresting conduct, I consistently argue that the search in this case is not supported under federal or state law, including our rules of criminal procedure. While the majority waxes eloquent about the history of searches incident to arrest, it conveniently discounts the fact that we have never before upheld a search where none of the factors under our rules of criminal procedure are present. What we have done is applied Rule 12.1 and 12.4 in light of *Belton*, *Thornton*, and other applicable federal and state law. Despite the majority's assertion, this approach is neither an "ad hoc standard" or a "nebulous" standard that "is not the law." Rather, the standards cited are based on longstanding rules of law mandated by the United States Supreme Court and by the Arkansas Supreme Court. If these rules of law constitute "heady stuff," it is "heady stuff" approved by our highest state court, and the highest court in our land. It is incumbent upon law enforcement officers and judges to

respect this "heady stuff." Moreover, it is the sworn duty of judges to examine nuances of time, place, and circumstance to determine whether a person's Fourth Amendment rights have been violated.

Given the facts of this case and applicable federal and state law, I am at a loss to see how the majority concludes that the warrantless search in this case was justified merely because appellant was a recent occupant of his vehicle and was arrested near his vehicle. I respectfully dissent.

I am authorized to state that Judge Neal joins in this dissent.

O LLY NEAL, Judge, dissenting.

*It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachment thereon. Their motto should be obsta principiis.*[1]
— *Boyd v. United States*, 116 U.S. 616 (1886).

I respectfully dissent in this case. In the cases cited by the majority, where the court has found lawful searches incident to arrest, the vehicle involved somehow factored into the circumstances surrounding the arrest. *See Thornton v. United States*, 541 U.S. 615 (2004) (petitioner slowed his vehicle down so as to avoid driving next to officer); *New York v. Belton*, 453 U.S. 454 (1981) (trooper observed vehicle traveling at an excessive rate of speed). Arkansas cases seem to have followed this same principle. *See State v. Earl*, 333 Ark. 489, 970 S.W.2d 789 (1998) (officer observed truck run a stop sign); *Campbell v. State*, 294 Ark. 639, 746 S.W.2d 37 (1988) (vehicle identified by victim as the one his robbers occupied); *Thornton v. State*, 85 Ark. App. 31, 144 S.W.3d 766 (2004) (tag belonged to a truck and not the automobile to which it was affixed); *Kearse v. State*, 65 Ark. App. 144, 986 S.W.2d 423

---

[1] *Obsta principiis* means "withstand beginnings; resist the first approaches or encroachements." BLACK'S LAW DICTIONARY 1107 (8th ed. 2004).

(1999) (appellant was speeding); *Kimery v. State*, 63 Ark. App. 52, 973 S.W.2d 836 (1998) (officer initiated stop because appellant turned off the road without signaling).

Here, appellant was arrested on child-support and hot-check warrants, and his vehicle in no way factored into Officer Loudermilk's reasoning for the arrest. Loudermilk testified that, after appellant exited his vehicle that appellant parked in front of his home, he arrested appellant because of the outstanding warrants and not because of any traffic infractions he had witnessed. Hence, as a watchful guardian of the constitutional rights of our citizens, I cannot agree that the basis used by the majority — lawful search incident to arrest — was applicable in this situation, especially considering that the vehicle played no role in the conduct resulting in the arrest. Allowing such a basis to support an affirmance in this case is a deviation, however slight, from my obligation to safeguard the constitutional rights of our citizens. The court's duty is to protect those rights, not to encroach upon them and dilute their protections every chance it sees fit.

I am authorized to state that Judges HART, GLADWIN, and GRIFFEN join me in this dissent.